MARTINKOSKI, Plaintiff in error, v. STATE, Defendant in error.

*No. State 158.   Argued April 2, 1971.—Decided May 4, 1971.*
(Also reported in 186 N. W. 2d 302.)

238

240

For the plaintiff in error there were briefs and oral argument by *James H. McDermott,* state public defender.

For the defendant in error the cause was argued by *William F. Eich,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J.   Two issues are presented:

(1) Does the record made in the trial court support the court's conclusion that the defendant's guilty pleas were made voluntarily and intelligently?

(2) Did the court's use of the phrase "without prejudice" in granting the state's motion to dismiss another charge negate the finding that the defendant's guilty pleas were made voluntarily and intelligently?

The defendant argues that the granting of his post-conviction motion to withdraw his pleas of guilty is

necessary to correct a manifest injustice in that his pleas were not made voluntarily and intelligently. The primary basis for this assertion is that the trial court did not establish his understanding of the nature of the offenses with which he was charged as required by the United States Supreme Court's decision in *Boykin v. Alabama* (1969), 395 U. S. 238, 89 Sup. Ct. 1709, 23 L. Ed. 2d 274, which made Rule 11 of the Federal Rules of Criminal Procedure (18 USCA, p. 557), as interpreted by *McCarthy v. United States* (1969), 394 U. S. 459, 89 Sup. Ct. 1166, 22 L. Ed. 2d 418, applicable in state courts. The *Boykin* decision was implemented in Wisconsin by this court's decision in *Ernst v. State* (1969), 43 Wis. 2d 661, 170 N. W. 2d 713.

This court has continually stated that the defendant has the burden of establishing that his plea was made involuntarily or unintelligently. *Drake v. State* (1969), 45 Wis. 2d 226, 229, 172 N. W. 2d 664. And when the trial court has heard the evidence presented on a motion to withdraw a plea of guilty this court will not upset the factual findings of the trial court unless they are contrary to the great weight and clear preponderance of the evidence. *Ernst v. State, supra,* at page 668.

At the hearing held in this case the defendant was asked the following question:

"*Q.* Mr. Martinkoski, prior to December 31 of 1969, did your then attorney Mr. McCormick, of Milwaukee, ever fully advise you or instruct you as to what the elements of the crime of burglary with intent to steal are?"

The defendant answered, "No, he did not." There were no other similar or related questions asked of the defendant and this was the only evidence presented which touched upon this basis for his motion. There is no suggestion in the testimony taken at the hearing that the defendant was unaware of the nature of the charge.

The defendant never, in fact, claimed that he did not understand the nature of the charge when he made his pleas.

The defendant does not dispute the above, nor does he think it relevant. Rather, he argues that no matter if he understood the nature of the charges or not, he should still be entitled to withdraw his pleas since the trial court failed to create a record which reflects his understanding of the nature of the offense, but only that he knew the name of the offense with which he was charged.

The defendant submits that before accepting his pleas the court should have established on the record that the defendant specifically understood that the charge meant that he had: (1) Intentionally entered each of the places involved in the charges; (2) that his entry of each of such places was without the consent of the person in lawful possession thereof and that he knew that his entry was without such consent; and (3) that he entered each of such places with intent to steal. The defendant argues that the record must reflect that he knew and understood the elements of the offense as they are stated in Wisconsin Jury Instructions—Criminal. But a review of the *McCarthy* and *Boykin* decisions indicates that neither one demands a detailed discussion of the elements of the offense, and this court's decision in *Ernst* did not so interpret them.

The significance of the *McCarthy* decision was explained in *Ernst v. State, supra,* at pages 672, 673, as follows:

"In *McCarthy* the court held that Rule 11 is not complied with unless the judge personally questions the defendant and exposes the defendant's state of mind on the record. The record of the judge's interrogation must reveal that the plea was voluntary and that the defendant understood both the charge and its consequences.
". . .

". . . the record must also indicate 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which defendant has pleaded guilty.' The requirements of Rule 11 are not met if the judge assumes that a plea was entered voluntarily and understandingly."

Therefore, while *McCarthy, Boykin* and *Ernst* have all imposed a rigid burden on trial courts to create a record showing the defendant's understanding of the nature of the charge, they have not established mandatory or inflexible guidelines as to the form or nature of the inquiry that must be made. The court specifically refrained from doing so in *McCarthy. See McCarthy v. United States, supra,* at page 467, footnote 20. The mandate as to the end result which the trial court must achieve is clear, but the precise means by which it does so have been left largely to its own discretion.

In this case the court asked Martinkoski what he was charged with and he, in his own words, responded that he was charged with "burglary." In answer to the court's questions concerning why he was changing his plea from not guilty to guilty, defendant stated that he was doing it because he was guilty of the charges. If the court had terminated the questioning of the defendant at this point there would be some merit to his claim that the record shows nothing more than that he knew the name of the offense with which he was charged.

However, the court then proceeded to hear testimony from two police officers, Wauwatosa Police Detective Edward Volz concerning one offense, and South Milwaukee Police Detective Leonard Miller concerning the other. As a part of his testimony Detective Volz read a portion of the defendant's signed statement in which he discussed the burglaries which he committed, and stated that he had committed them by entering houses where he found no one at home, with the intention of taking items from

them. Detective Miller testified that the defendant gave an oral statement regarding the second offense in which he admitted that he had entered the house and taken money and rings. In addition, the testimony of Detective Miller and two other officers implicated the defendant in approximately nine other offenses, eight of them burglaries, which they had discussed with the defendant and which he admitted committing.

Following this the defendant testified in his own behalf, and in response to extensive questioning by his attorney he explained to the court how and why he had committed the offenses. This explanation included statements that he was doing landscaping work and grass cutting for many people and that when he would find an open house with no one at home he would go inside and take money and various other items. It was only after hearing all of this testimony that the court accepted the defendant's pleas.

The defendant's own testimony prior to the acceptance of his pleas by the court clearly establishes that he knew he was charged with burglary, that he was admitting that he was guilty of burglary, and that in his own mind he was guilty of burglary because he had entered houses knowing that he had no permission to do so, with the intention of stealing money or other items of value. Such an expression of understanding, *i.e.,* that he knew he was guilty of burglary because he had done certain acts with a particular intent, actually provides a far more accurate and reliable measure of his understanding of the nature of the crime than could be achieved by explaining the list of elements contained in the jury instruction and asking if he understood them. The defendant himself stated the elements of the offense in his own words when he explained what he had done and why he was pleading guilty.

In *Brady v. United States* (1970), 397 U. S. 742, 747, 90 Sup. Ct. 1463, 25 L. Ed. 2d 747, the court, after noting that a plea of guilty must be intelligent and voluntary to be valid, pointed out that the new element added in *Boykin* was the requirement that the record affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily. The instant record clearly makes such an affirmative showing. The trial court did not indulge in any presumption of defendant's understanding from his willingness to plead or from the fact that he was represented by counsel. The necessary understanding of the charges was shown by the defendant's own testimony and preserved on the record for subsequent review.

The only basis upon which defendant could continue to maintain his argument that the record is inadequate is that the testimony which explicitly shows his understanding of the elements of the offense was given in response to questions asked of him by his attorney rather than by the court itself. While trial courts cannot be allowed to abdicate their responsibility of personally interrogating a defendant before accepting his plea, to allow defendant to withdraw his pleas in this case on this basis alone would be to ignore the obvious intent of *McCarthy* and *Boykin*. Admittedly, the trial court could have elicited the same information from defendant and been in strict compliance with the requirements of *Ernst*, but such repetitious testimony would have added little, if anything, to the sufficiency of an already abundant record.

The defendant's second argument is that his pleas could not have been made intelligently because he did not understand the meaning of the term "without prejudice" which the trial court and the district attorney used in referring to a stipulation to dismiss a third charge

then pending against him.  In this regard the transcript reads as follows:

"*Mr. Genrich:* The state moves to dismiss case number H–60, the defendant being Joseph James Martinkoski, charged with burglary allegedly committed at 3026 South Stratton Drive, West Allis, Wisconsin, on October 27, 1969, the state moves to dismiss with the understanding and the stipulation with the defendant, through his counsel, that this matter will not be subsequently be issued or charged against the defendant, the district attorney's office will not prosecute case number H–60 against the defendant, but that the state does intend, with the consent of the defendant through his counsel, to read H–60 into the record.

"*The Court:* Now you are moving to dismiss without prejudice that charge?

"*Mr. Genrich:* Yes, Your Honor.

"*The Court:* Is that correct?

"*Mr. McCormick:* That is correct, Your Honor.

"*The Court:* Is that correct, Mr. Martinkoski, is that how you want me to handle it?

"*The Defendant:* I will appreciate it.

"*The Court:* All right, case number H–60 is dismissed without prejudice and without costs."

The extent of the defendant's understanding of the nature and consequences of his pleas is apparent from the record.  But without attempting to explain why, he now argues that the pleas were invalid because he did not understand the meaning of the term "without prejudice."

Defendant stipulated to the reading-in of the third charge, and its consideration in the imposition of a sentence in exchange for the agreement of the state not to prosecute that charge.  He received precisely what he bargained for.  The terms of the stipulation in the record are clear and unambiguous: The third charge was dismissed on the condition that it would not be subsequently charged and the requirements of due process would prevent its subsequent prosecution. *Mallon v. State* (1970), 49 Wis. 2d 185, 181 N. W. 2d 364.  The defendant has

not been prosecuted for the third offense nor could he be. Therefore, even if the defendant did not understand the meaning of the term it could not possibly have affected the voluntariness or understanding with which his pleas were entered because he has in fact received the exact concession which he thought he was getting.

We conclude that the record in this case clearly reflects that the requirements of *McCarthy* and *Boykin* as implemented by *Ernst* have been satisfied. Further, defendant has made no showing that his pleas were not entered voluntarily and intelligently. The order of the trial court denying his motion to withdraw those pleas and vacate the sentences must be affirmed.

*By the Court.*—Order affirmed.