STATE, Respondent, v. FULLER, Appellant.*

*No. State 103. Argued January 31, 1973.—Decided February 27, 1973.*
(Also reported in 204 N. W. 2d 452.)

* Motion for rehearing denied, without costs, on April 20, 1973.

410

For the appellant there was a brief and oral argument by *Anthony K. Karpowitz,* Legal Aid Society of Milwaukee.

For the respondent the cause was argued by *Richard J. Boyd,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HANLEY, J. Two issues are presented on this appeal. ■ Did the October 14, 1969, order of this court which substituted Judge CRANE for Judge COFFEY to preside at defendant's trial prohibit Judge COFFEY from presiding over defendant's probation revocation hearing; and

■ Under the facts of this case, was defendant's conviction for both forgery and attempted theft by false representation really a conviction of both the forgery and uttering of the same instrument.

*Probation revocation.*

Despite the fact that the defendant in no way claims that Judge COFFEY was prejudiced against him in his ultimate decision to revoke probation, and despite the fact that he specifically consented to Judge COFFEY sitting in judgment at his revocation hearing, defendant, nevertheless, takes the position that he was without power to waive away the order of this court which was at the time outstanding, and which cited the substitution of Judge CRANE because of the "disqualification" of Judge COFFEY.

As support for his proposition that his probation revocation was but another stage of his original criminal proceeding, defendant cites *Mempa v. Rhay* (1967), 389 U. S. 128, 88 Sup. Ct. 254, 19 L. Ed. 2d 336. In *Mempa,* the United States Supreme Court said that the defendant's sixth amendment right to counsel applied since his actual sentencing was *deferred* and, therefore, contemporaneous with his parole revocation hearing.

The defendant in the case at bar was initially sentenced and the execution stayed and he was placed on probation. The *Mempa* rationale is in no way applicable to the issue presented before this court of whether a probation hearing is so closely related to the original conviction as to have the order of disqualification remain in effect to thereby prohibit Judge COFFEY from presiding at the hearing.

The fact that *Mempa* presented exceptional circumstances regarding the relationship of parole or probation revocations with the original criminal proceeding was most recently emphasized by the United States Supreme

Court in *Morrissey v. Brewer* (1972), 408 U. S. 471, 480, 92 Sup. Ct. 2593, 33 L. Ed. 2d 484. In reaching the determination that a parolee was entitled to a revocation hearing, grounded on the "due process clause" of the fourteenth amendment to the United States Constitution, the court stated:

"We begin with the proposition that the revocation of parole is not part *of a criminal prosecution* and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. Cf. *Mempa v. Rhay*, 389 U. S. 128 (1967). Parole arises after the end of the criminal prosecution, including imposition of sentence."

Later, addressing itself specifically to the factual inquiry into the basis for revocation, the court again made reference to the relationship of the hearing to the original case.

"We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in *any sense.*" (Emphasis added.)  408 U. S. at page 489.

This court in *State ex rel. Johnson v. Cady* (1971), 50 Wis. 2d 540, 185 N. W. 2d 306, had an opportunity to comment on the overall relationship between an initial criminal conviction and a subsequent parole revocation. Commenting on the type of hearing necessary, this court quoted with approval language from *Johnson v. Stucker* (1969), 203 Kan. 253, 453 Pac. 2d 35, 42, certiorari denied, 396 U. S. 904, 90 Sup. Ct. 218, 24 L. Ed. 2d 180, at page 549 of its decision:

" 'A revocation hearing is not a trial in the traditional sense, nor is the board necessarily concerned with the commission of a criminal offense. As a matter of fact, a prisoner having been granted conditional freedom on parole, the primary question before the board is whether

within its discretion the parolee is still a good parole risk. . . .' "

The only question before Judge COFFEY was whether or not the defendant, given his past conduct of violating the conditions of his probation, was still a "good risk." Such a determination was completely independent from defendant's original conviction for the crimes charged. Since both the defendant and his attorney did not challenge Judge COFFEY as the presiding judge at either of the two revocation hearings he should now not be heard to complain.

We conclude that the order of October 14, 1969, which substituted Judge CRANE for Judge COFFEY to preside at defendant's trial did not prohibit Judge COFFEY from presiding over defendant's probation revocation hearings on January 5, 1971, and March 18, 1971.

*Question of included crime.*

The defendant contends now that where one is charged with both forgery and attempted theft by false representation, only one conviction may be had where the attempted theft under the particular set of facts present in this case merges or is included within the uttering of the document forged in the same transaction; that is to say, the attempted theft by false representation is the included crime of uttering and is, therefore, barred.[2]

---

[2] "939.66. **Conviction of included crime permitted.** Upon prosecution for a crime, the actor *may be convicted of either the crime charged or an included crime, but not both.* An included crime may be any of the following:

"(1) A crime which does not require proof of any fact in addition to those which must be proved for the crime charged; or

"(2) A crime which is a less serious type of criminal homicide than the one charged; or

"(3) A crime which is the same as the crime charged except that it requires recklessness or negligence while the crime charged requires a criminal intent; or

While there is no question that there cannot be a conviction for both forgery (sec. 943.38 (1), Stats.) and uttering (sec. 943.38 (2)), where they are part of the same transaction, *State v. Nichols* (1959), 7 Wis. 2d 126, 95 N. W. 2d 765, it need not necessarily follow that the crime of attempted theft by false representation (sec. 943.20 (1) (d)), is an included crime of uttering (sec. 943.38 (2)). The actual facts disclosed at trial must be considered.

At about 3:15 p. m. on March 15, 1968, Mr. Joe L. Eison parked his 1963 silver-gray Buick Riviera at his place of employment, Western Metal, in the city of Milwaukee. After completion of his work and his return about midnight, Mr. Eison discovered his car missing and he had not given anyone permission to take or use it. In the car at the time of its theft was the certificate of title and other personal papers of Mr. Eison. On the following day, the defendant Fuller and one Donald E. Voight, a codefendant as to the attempted theft charge, drove into the parking lot of Venus Ford in Cudahy, Wisconsin, in a 1963 green and gray Riviera which, it is admitted, was the Eison automobile. The defendant and Voight indicated to Mr. Pius Selensky, a salesman for Venus, that they were interested in a 1964 Ford owned by Venus and after a short period of negotiations settled on an even trade of the two automobiles. Throughout negotiations, the defendant identified himself as Joe Eison. The deal for the even exchange of the two automobiles was reflected in a sales contract and uncontradicted testimony disclosed that the defendant had in fact signed the contract in the presence of Selensky, using the name of Joe L. Eison.

"(4) An attempt in violation of s. 939.32 to commit the crime charged; or

"(5) The crime of attempted battery when the crime charged is rape, robbery, mayhem or aggravated battery or an attempt to commit any of them." (Emphasis added.)

Although Selensky was uncertain as to whether the automobile title was signed in the office or already signed when he received it, the reverse side of the title was signed Joe L. Eison. The owner, Mr. Eison, testified that when his car was taken with the title inside, it was unsigned and that the signature on the title was not his nor had he given anyone permission to sign it.

The transaction never went through because there was a lien on the Buick. The defendant told Mr. Mach of Venus Ford that the lien had been satisfied the day before and that this fact could be confirmed by calling his personal friend, Bob Adams, whose name in fact appeared on the lien stamp and at a number supplied by defendant. Only after speaking to a man purporting to be Bob Adams, did Mach become suspicious of the fact that the Buick might be stolen.

The state contends that the signing of the purchase contract and the forging of the title were distinguishable acts and distinguishable crimes even though they occurred during the same general transaction or were close in time. *State v. Driscoll* (1972), 53 Wis. 2d 699, 707, 193 N. W. 2d 851.

We think the *Nichols* rationale relied upon by defendant applies only to the making and uttering of the same instrument. Here the defendant falsely signed the name of Joe L. Eison to the purchase contract, purporting that it was in fact signed by Joe L. Eison. The intent was to defraud Venus out of the 1964 Ford which they owned and that the purchase contract itself was evidence of the property rights in the automobile transferred to Venus, all of which constituted forgery pursuant to sec. 943.38 (1) (a), Stats. Defendant was not charged with forgery on this count but rather with attempted theft by false representations. Under this view, even if one assumes that the numerous verbal misrepresentations that the defendant was Joe L. Eison might somehow be

merged in the offense of uttering as defendant contends, they were made for the purpose of uttering the sales contract and not the certificate of title. In view of such evidence, clearly two separate and distinct crimes have been charged arising out of two separate and distinct transactions. The forgery and theft charges were based upon two separate instruments. Even if the acts of the defendant were considered as a single transaction, separate charges may be based upon a single act if it involves violation of several provisions of the statutes. *See* sec. 939.65, Stats., *State v. Chacon* (1971), 50 Wis. 2d 73, 183 N. W. 2d 84.

We conclude that defendant's conviction for both forgery and attempted theft by false representation was not a conviction of both the forgery and uttering of the same instrument.

*By the Court.*—Orders affirmed.