MELBY, Plaintiff in error, v. STATE, Defendant in error.

*No. State 208 (1974). Submitted under sec. (Rule) 251.54 October 2, 1975.—Decided October 28, 1975.*

(Also reported in 234 N. W. 2d 634.)

For the plaintiff in error the cause was submitted on the brief of *John D. Hibbard* of Eau Claire.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Charles R. Larsen,* assistant attorney general.

CONNOR T. HANSEN, J. On August, 6, 1971, police officers obtained a search warrant, entered defendant's apartment and conducted a search. In the bedroom, which the officers had reason to believe was occupied by defendant, they located a bottle containing small white capsules and yellow tablets. Also, in that room a cigarette pack with small box of tablets was discovered. In an unoccupied bedroom located in the same apartment, officers found a bottle containing white powder. These substances were later analyzed and determined to be phenylpropanolamine, a derivative of amphetamine; des-

oxyephedrine (Methamphetamine); and hydromorphone hydrochloride (Dilaudid), a derivative of morphine, respectively. Defendant was placed in custody, and a preliminary hearing was held on November 24, 1971. He was then committed to the Eau Claire County Hospital for the purpose of undergoing an examination with respect to his mental condition as it related to his capacity under the currently recognized tests for insanity and his capacity to understand the proceedings and assist in his defense. The result of that examination is not a part of the record before this court. The defendant escaped while in custody at the hospital and was charged with escape.

Subsequently extended negotiations were undertaken between the district attorney and the defendant's court-appointed counsel. As a result of those negotiations, the state agreed to forego prosecution of certain felony charges. These included several burglary charges, the escape charge, and several felony charges which were alleged to have occurred in Chippewa county and were consolidated with the instant proceedings. The Chippewa county charges also included burglary charges. As a part of those negotiations the state agreed to recommend a maximum sentence of three years. The Chippewa county district attorney concurred in these negotiations. As a result of those negotiations the defendant pled guilty to the charges involved in this review. This agreement was brought to the court's attention at the plea hearing.

The information alleged that for the purposes of invoking the provisions of sec. 939.62, Stats. (Increased penalty for habitual criminality), the defendant had been convicted of the following felonies in the Eau Claire county circuit court.

(1) November 1, 1968, burglary, in violation of sec. 943.10 (1) (a), Stats.

(2) November 1, 1968, burglary, in violation of sec. 943.10 (1) (a), Stats.

The defendant acknowledged these convictions and in response to inquiry from the trial judge, responded that he knew and understood the possibility of increased penalty and the extent thereof. The trial judge found each of these convictions remained of record and unreversed. At the hearing, the court further questioned defendant as to his understanding of the fact that he had a right to a jury trial, and that the court was not bound by the state's recommendation as to sentence. To each of these inquiries, defendant responded that he understood. The court then made inquiry into the voluntariness of the plea with respect to threats, inducements or any idea that defendant might hold that a harsher sentence would be imposed should he refuse to plead guilty. Defendant indicated that none of these reasons had led to his guilty pleas. The court then made a finding that the pleas were voluntary and defendant entered a plea of guilty to each of the three charges.

Testimony was heard by the trial court from one of the police officers involved in the search of defendant's apartment. He testified as to the various sources of information, including defendant's probation officer, through whom they knew which apartment and which room belonged to defendant. He then gave a description of the search which produced the prohibited substances and items identified as belonging to defendant, which were located in the room allegedly occupied by defendant. At the conclusion of this testimony, the court found that the facts constituted the three offenses charged and ordered a presentence investigation.

The sentencing hearing took place on October 19, 1972. At the hearing, the trial judge specifically described the defendant's extensive criminal record, which will be referred to in more detail later in this opinion. He pointed

to the difficulty in imposing disparate sentences, *i.e.*, giving defendant a state-recommended sentence not commensurate with his background and crimes, while imposing harsher penalties on a second-named person in similar circumstances. The trial judge indicated that: "This is the kind of plea agreement that somewhat compromises the court," and that: "The thing I am seriously considering in imposing the sentences I am about to impose is such exemplary value as the sentences may have on persons similarly inclined to commit crime. The people inclined to commit crime must know they are going to be punished."

In accordance with maximum penalty provisions for each of the violations charged, plus permissible increased penalty under sec. 939.62, Stats., for habitual criminality, the trial court imposed indeterminate terms of one year on the first count and three years on the second count, to be served concurrently, and an indeterminate term of three years on the third count, to be served consecutively with the first two sentences. Defendant's sentence was subsequently reduced in the amount of 323 days based on the period spent in presentence incarceration.

Pursuant to defendant's request for representation in matters pertaining to postconviction relief, new counsel was appointed. A motion was filed requesting that the defendant be allowed to withdraw his guilty plea and that the judgment and sentence resulting from that plea be vacated on the basis of issues now on appeal. Following a hearing on the motion, the trial court entered an order finding that the plea was voluntary; that defendant fully understood the plea and the possible sentence that could be imposed; that he was told that the court was not bound by the plea agreement; that the sentence was authorized by law; and that defendant had been denied none of his constitutional rights. The motion, therefore, was denied. This review follows.

We consider the following issues to be raised on this review:

1. Should the trial judge have made inquiry into the possible influence of drugs on defendant's plea, before accepting that plea as voluntary?

2. Did defendant's possession of two different types of illegal substances, and possession, party to a crime, of a third type, constitute three separate crimes?

3. Did the trial court, by applying the habitual criminality statute, sec. 939.62, Stats., to two of the charges, impose an erroneously excessive sentence?

4. Did the trial court err in failing to accept the state's sentencing recommendation?

5. Was there insufficient evidence on which to base a finding that defendant committed the crimes to which he entered guilty pleas?

6. Should defendant's sentence be reduced in the interest of justice?

*Voluntariness of guilty plea.*

Sec. 971.08, Stats., states that:

"(1) Before the court accepts a plea of guilty or no contest, it shall:

"(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted; . . ."

Defendant argues that because of the nature of the charges against him and because the trial court had knowledge that defendant had been hospitalized for drug treatment, inquiry should have been made into the possible effects of drug use on the voluntariness of his plea.

This court has reiterated on a number of occasions the elements which must be present to establish as valid the trial court's acceptance of a guilty plea. *Ernst v. State* (1969), 43 Wis. 2d 661, 674, 170 N. W. 2d 713.

We have also had occasion to address the manner in which the *Ernst* guidelines have been applied in a variety of factual circumstances, *i.e.*, *Martinkoski v. State* (1971), 51 Wis. 2d 237, 186 N. W. 2d 302.

In *State v. Bagnall* (1973), 61 Wis. 2d 297, 308, 309, 212 N. W. 2d 122, it was stated:

". . . A guilty plea proceeding 'demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences.' In *Ernst v. State* this court enumerated those things which a court must determine before it may properly accept a plea of guilty. However, this court has consistently held that while the *Boykin* [*Boykin v. Alabama* (1969), 395 U. S. 238, 243, 244, 89 Sup. Ct. 1709, 23 L. Ed. 2d 274] and *Ernst* cases have imposed a rigid burden on trial courts to create a record showing the defendant's understanding of the nature of the charge,

" '. . . they have not established mandatory or inflexible guidelines as to the form or nature of the inquiry that must be made. . . . The mandate as to the end result which the trial court must achieve is clear, but the precise means by which it does so have been left largely to its own discretion.'

"As this court recently stated, 'It is not the litany to be recited that is most important. It is rather that the record make clear that the plea of guilty was voluntarily and understandingly entered.' . . ."

Cases also have arisen where the state of mind of the accused in relation to the voluntariness of the plea is an important consideration. In *Luter v. State* (1972), 53 Wis. 2d 796, 803, 193 N. W. 2d 649, defendant claimed to be highly disturbed and near hysteria at the time of the plea. This claim, considered under pre-*Ernst* standards, was found without basis, since the record showed him to be "in full command of his faculties at the time [of] the plea . . . ."

The defendant in *Craker v. State* (1974), 66 Wis. 2d 222, 223 N. W. 2d 872, asserted a confused state of mind

at the time of the plea as a basis for withdrawal of his plea. Such allegation was considered dispelled by the trial court's statement at the hearing on the motion to withdraw, that unusually extensive contact with and observation of defendant led to the conclusion that a confused state of mind did not contribute to defendant's plea.

With respect to the effect of the use of drugs on a defendant's state of mind, defendant herein cites *United States v. Malcolm* (2d Cir. 1970), 432 Fed. 2d 809, 812. In that case, the court indicated that:

"[The] safeguards of fundamental fairness make plain that Malcolm would be entitled to vacation of his plea and conviction if he proved that his mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea. . . . A plea in such circumstances is not a knowing, free and rational choice of the alternatives open to an accused and cannot be an intelligent waiver of constitutional rights. It would, therefore, offend due process. . . ."

The court went on to find that the presentence report showing no use of drugs for three weeks, a doctor's statement that defendant was free from any addiction, and coherent written statements of admission of guilt by defendant, conclusively refuted the claim that the plea was the result of a drug-impaired mental state. The test quoted above was utilized by the fourth circuit in *United States v. Truglio* (4th Cir. 1974), 493 Fed. 2d 574, 579, when it held to be correct, based on a review of the record, the trial court's finding that defendant was alert and very well-possessed of his faculties at the time of the plea, in spite of defendant's allegations that he was not in control of his faculties due to the influence of the medication he had taken. An analogous Wisconsin

case is *Levesque v. State* (1974), 63 Wis. 2d 412, 217 N. W. 2d 317, where it was held that the trial court committed no error in refusing to grant an evidentiary hearing to determine whether defendant was undergoing withdrawal at the time of his plea and thus was unable to understand the proceedings, since the petition presented to the trial court failed to allege facts sufficient to substantiate the necessity for a hearing.

In the instant case, it is not asserted that defendant was under the influence of drugs at the time the plea was made, or that his mind had been so impaired by extensive use of drugs as to render him incapable of understanding what was going on, or that the trial judge failed to make the inquiry as to voluntariness generally recognized as sufficient under *Ernst, supra,* and sec. 971.08, Stats., *supra.* On the contrary, the record shows that the trial court questioned the defendant directly with respect to his age and educational level, his prior contact with the criminal justice system, his opportunity to confer with counsel at all stages of the proceedings, his understanding of the possible sentences involved, his waiver of constitutional rights, and his understanding that the court was not bound by the plea agreement. The court further questioned him as to whether his plea was the result of any threats or inducements, especially insofar as the penalty to be imposed was concerned. To all the questions, defendant responded that he understood and that his plea was not the result of any threats or inducements. In addition, the record shows that defendant, at the time of imposition of sentence, made a coherent statement for the record requesting leniency in light of his alleged drug addiction. Furthermore, counsel for defendant noted that he was of well-above average intelligence.

A hearing was held on the motion for withdrawal of the plea. As a result of that hearing, the trial court

once again found the plea to be voluntary and made with full understanding. In view of the extensive and detailed record, any claim that defendant lacked capacity to make the plea because of extensive use of drugs is without merit.

Defendant contends, however, that regardless of any actual or claimed impairment, the trial judge should have taken affirmative steps to make additional inquiry into the possibility of drug-related impairment, in spite of the fact that no request was made at the time of the plea, and in spite of the fact that no evidence of actual impairment was offered. The record shows no actual impairment of faculties nor any behavior which would lead the trial court to suspect such impairment. On the contrary, the record conclusively demonstrates that the defendant was composed and intelligently participated in all of the proceedings. He was represented by competent counsel. No attempt has been made to introduce evidence of impairment. If such impairment existed, evidence thereof would have been available to be brought to the attention of the court in view of defendant's commitment to the hospital for a determination on the issue of capacity. The court ordered a presentence investigation. Every opportunity was offered to the defendant and counsel to present information bearing on capacity, and the court took all reasonable precaution to determine that the pleas entered were voluntary. The defendant was confined without access to drugs for a period of twenty-three days prior to his appearance to enter the plea. There is a complete absence of any request by counsel or defendant to make such investigation. No showing was made that such investigation might be necessary. From our examination of the record, we are of the opinion that the trial court extended the defendant the " 'utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what

the plea connotes and of its consequences.' " *Bagnall, supra,* 308.

In *Bagnall, supra,* page 308, this court stated:

". . . The burden is on the defendant to establish adequate grounds for the withdrawal of his plea, by clear and convincing evidence and the court's exercise of its inherent power to grant or deny the motion will not be disturbed unless it is shown that there has been an abuse of discretion. . . ."

Failure to make the specific inquiry herein requested did not constitute an abuse of discretion.

*Duplication of charges.*

Sec. 939.71, Stats., provides:

". . . If an act forms the basis for a crime punishable under more than one statutory provision of this state or under a statutory provision of this state and the laws of another jurisdiction, a conviction or acquittal on the merits under one provision bars a subsequent prosecution under the other provision unless each provision requires proof of a fact for conviction which the other does not require."

Sec. 939.65, Stats., provides:

". . . If an act forms the basis for a crime punishable under more than one statutory provision, prosecution may proceed under any or all such provisions."

The complaint charges defendant with three separate offenses based on violations of sections of the statutory chapter involving narcotics and dangerous substances, Laws of 1969, which have since been renumbered and amended, sec. 161.01, *et seq.* The first count was for possession of a dangerous drug, specifically phenylpropanolamine, a derivative of amphetamine, contrary to sec. 161.30 (7), Stats. 1969, which reads as follows:

". . . It shall be unlawful for any person to have any dangerous drug in his possession . . . ."

The second count was for possession of a dangerous drug, specifically desoxyephedrine (methamphetamine), contrary to sec. 161.30, Stats. 1969, which reads, in part, as follows:

". . . (1) As used in this section . . .
"(a) 'Dangerous drug' means any of the following:
". . .
"2 Any preparation which contains . . . amphetamine, desoxyephedrine. . . ."

The third count was for possession of a narcotic drug, specifically hydromorphone hydrochloride (Dilaudid), a derivative of morphine, as party to a crime (sec. 939.05, Stats.), contrary to sec. 161.02, Stats. 1969, which reads, in part, as follows:

"It is unlawful for any person to manufacture, possess, have control of, buy, sell, give away, prescribe, administer, dispense or compound any narcotic drug . . . ."

Defendant contends that the first two counts violate only one statutory section, rather than two, and the charges are based on only one act, *i.e.*, the possession of illegal substances, since the second count refers only to the statutory definition of what kinds of drugs fall within the proscription. He further contends that the third count, though based on a separate statutory section, nevertheless results from the same act, that of possession at one instant in time, and, therefore, should not be considered as a separate crime. We do not find this argument persuasive.

The question of whether two crimes may result from a single act has arisen in this jurisdiction under several sets of circumstances. On occasion it has been argued that one offense of which the accused has been charged is in reality a lesser-included offense of a second charge. In *Geitner v. State* (1973), 59 Wis. 2d 128, 207 N. W. 2d 837, the question was whether false imprisonment was a lesser-included crime of kidnapping. In holding that

it was not, this court stated that the same criminal act may constitute different crimes with similar but not identical elements. In other words, if any of the elements of proof required are different in the crimes charged, then they may be considered separate crimes. This was also the rule followed in *State v. Zdiarstek* (1972), 53 Wis. 2d 776, 785, 193 N. W. 2d 833, and *State v. Chacon* (1971), 50 Wis. 2d 73, 183 N. W. 2d 84. It has been further stated that even if the act of defendant were to be considered a single occurrence, nevertheless, in view of sec. 939.65, Stats., *supra,* separate charges may be based on a single act if it involves violation of several provisions of the statutes. *State v. Fuller* (1973), 57 Wis. 2d 408, 417, 204 N. W. 2d 452; *State v. Driscoll* (1972), 53 Wis. 2d 699, 707, 193 N. W. 2d 851.

In *Madison v. Nickel* (1974), 66 Wis. 2d 71, 223 N. W. 2d 865, the defendant was charged with four separate violations for sale of four different allegedly obscene magazines to one customer at one time. In holding that such purchase could give rise to separate violations this court stated, at page 83, that:

". . . The particular magazines in this case were all sold at the same time, to the same person, by the same person, at the same place. Those facts do not preclude a separate finding of a violation of the ordinance and a separate forfeiture on the sale of each magazine. This is so because each magazine is different, and the obscenity *vel non* of each magazine must be determined independently, without regard to the others. . . ."

So, too, in the instant case, each substance is different and the illegality of each must be determined independently, without regard to the others. The two drugs involved are listed as separate prohibited substances under the definition of dangerous drugs. Had one type been analyzed and found to be of a lawful variety, that would not have made possession of the other lawful. Proof was necessary that each drug was of a type prohibited by the

statute. The three different prohibited substances give rise to three separate criminal charges, and defendant was not charged with the same crime three times.

*Application of the repeater statute.*
Sec. 939.62, Stats., provides, in pertinent part:

". . . (1) If the actor is a repeater, . . . and the present conviction is for any crime for which imprisonment may be imposed . . . the maximum term of imprisonment prescribed by law for that crime may be increased as follows:
"(a) A maximum term of one year or less may be increased to not more than 3 years."

Defendant herein was convicted of three separate crimes carrying a maximum penalty of one year each. Through application of the statute quoted, *supra,* he was sentenced to one year on the first count, and three years on the second count, to be served concurrently. For the third count, he was sentenced to an additional three years, to be served subsequent to the first two sentences imposed.

Defendant argues that the sentence was excessive in that the increased penalty provided under sec. 939.62, Stats., was applied to more than one of the convictions obtained herein.

The standard of review for sentences enlarged by invocation of the repeater statute is the same as that for review of any sentence imposed by a trial court. In other words, the sentence will not be considered excessive unless there is a clear abuse of judicial discretion. *State v. Morales* (1971), 51 Wis. 2d 650, 658, 187 N. W. 2d 841. As was stated in *Hanson v. State* (1970), 48 Wis. 2d 203, 207, 179 N. W. 2d 909:

"A trial judge clearly has discretion in determining the length of a sentence within the permissible range set by statute. The standard by which cruel and unusual

punishment is determined does not preclude a sentence within the permissible statutory range from constituting cruel and unusual punishment and thus a reversible abuse of discretion on the part of the trial judge. However, this court has stated many times that review of a sentence of a lower court is guided by a strong policy against interference with the lower court's discretion. *Cheney v. State* (1969), 44 Wis. 2d 454, 468, 171 N. W. 2d 339, 174 N. W. 2d 1; *Finger v. State* (1968), 40 Wis. 2d 103, 111, 161 N. W. 2d 272."

The trial judge must state his reasons for imposing the sentence and this court has taken into consideration all the factors shown in the record to give support to any sentencing determination which is made. *State v. Morales, supra; State v. Guy* (1972), 55 Wis. 2d 83, 91, 197 N. W. 2d 774; *Lange v. State* (1972), 54 Wis. 2d 569, 577, 196 N. W. 2d 680.

The trial judge very specifically pointed out the factors he was taking into consideration in imposing the sentence. These included the defendant's poor history relating to prior offenses and failure to reform, the fact that failure to prosecute Eau Claire county charges and consolidated Chippewa county charges by the plea bargain resulted in a situation where the trial judge was unable to avoid disparity in sentencing between persons with similar backgrounds, and the exemplary value such sentences might have for persons "similarly inclined to commit crime." Defendant's extensive history of criminal offenses is well-corroborated by the record. The burglary convictions in 1968, alleged in the information for the purposes of invoking the provisions of sec. 939.62, Stats., are of record and unreversed and unchallenged. The record also discloses "that there was 20 some burglaries disposed of" when he was convicted in 1968. We see no need to detail several felony charges in both Eau Claire county and Chippewa county which were disposed of at the time the defendant pled guilty to the instant charges.

The factors taken into consideration by the trial judge at sentencing are also consistent with the purpose of the repeater statute as stated by this court:

". . . While one might think that a two-year sentence is excessive punishment for a misdemeanor, it must be remembered the repeater statute was passed for the very purpose of increasing the punishment of those persons who do not learn their lesson or profit by the lesser punishment given for their prior violations of the criminal laws. . . ." *Block v. State* (1968), 41 Wis. 2d 205, 212, 213, 163 N. W. 2d 196.

". . . Regardless of the particular phraseology of repeater statutes, their inherent purpose is to serve as a warning to first offenders. . . ." *State v. Midell* (1968), 40 Wis. 2d 516, 527, 162 N. W. 2d 54.

In *Hanson v. State, supra,* defendant received a three-year indeterminate sentence and contended that it was disproportionate in relation to the offense committed. The offense was the theft of merchandise worth less than $100, *i.e.*, two boxes of candy bars. The offense carried a maximum sentence of six months; use of the repeater statute resulted in the imposition of the three-year maximum sentence. This court held that the sentence was not an abuse of discretion, in view of the purpose of the statute and defendant's prior felonious record.

The trial court did not abuse its discretion in imposing the sentences it determined to be appropriate in this instance. The sentence was not excessive. It was not an error at law to invoke the provisions of sec. 939.62, Stats., when imposing sentence on the second and third counts in the instant case.

*The plea agreement.*

Defendant argues that the trial court should have either accepted the plea agreement in its entirety, including the recommended three-year maximum sentence, or rejected it altogether, thus giving defendant an oppor-

tunity to withdraw his plea of guilty. This is not the law of this state. The record conclusively shows that the defendant was informed of and fully understood the full range of penalties that could be imposed both as to the crimes charged and as a result of the invocation of the increased penalty provisions of sec. 939.62, Stats. It is equally clear that the defendant knew and understood that the trial court was not bound by his plea agreement with the state before he entered his pleas of guilty.

This court has established certain requirements to assure the fair operation of the plea negotiating process. The agreement between the defendant and the state must be made a matter of record, and the voluntariness of the plea itself must be inquired into by the trial court, in accordance with the specified standards of sec. 1.5, ABA *Standards Relating to Pleas of Guilty* (Approved Draft, 1968). *State ex rel. White v. Gray* (1973), 57 Wis. 2d 17, 22–25, 203 N. W. 2d 638; *Craker v. State, supra,* page 226. Further, it has been held that, because plea negotiating involves the public interest to a very significant degree, any factual stipulations entered into by the parties can be rejected by the trial court. *Birts v. State* (1975), 68 Wis. 2d 389, 228 N. W. 2d. 351.

It has been held also that failure to receive sentence concessions contemplated by a plea agreement is no longer available as a basis for withdrawing a guilty plea on the grounds of manifest injustice. *Young v. State* (1971), 49 Wis. 2d 361, 367, 182 N. W. 2d 262:

". . . Since the imposition of sentence is entirely a responsibility of the trial judge, this provision could be implemented only if the judge himself was a party to the plea bargain or agreement. However, in this state since *Wolfe* [*State v. Wolfe* (1970), 46 Wis. 2d 478, 175 N. W. 2d 216], this court has made it clear that trial courts are not to participate in plea bargains. [footnote 5: ' ". . . This is true because (1) the defendant can

receive the impression from the trial judge's participation in the plea discussions that he would not receive a fair trial if he went to trial before the same judge; (2) if the judge takes part in the preplea discussions, he may destroy his objectivity when it comes to determining the voluntariness of the plea when it is offered; (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report; and (4) the defendant may feel that the risk of not going along with the disposition which is apparently desired by the judge is so great that he will be induced to plead guilty even if innocent." *State v. Wolfe* (1970), 46 Wis. 2d 478, 488, 175 N. W. 2d 216.]' . . . plea bargains between prosecution and defense cannot reach nor invade the matter of sentencing which is entirely for the judge to determine."

*See also: Farrar v. State* (1971), 52 Wis. 2d 651, 655, 191 N. W. 2d 214.

It is abundantly clear that the defendant knew and understood the full range of possible penalties, and that the trial judge was not bound by his plea agreement with the state. The trial court did not commit error in accepting the guilty pleas while rejecting the sentence recommendation. We would observe that although the defendant did not receive the sentence concessions contemplated by the agreement, he did escape prosecution for a number of other felonies in both Eau Claire and Chippewa counties.

The defendant also contends there was no factual basis for the plea of guilty.

Sec. 971.08, Stats., a codification of the procedure set forth in *Ernst v. State, supra,* states, in relevant part:

". . . (1) Before the court accepts a plea of guilty or no contest, it shall:

". . .

"(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged."

The trial court made such inquiry of defendant and we have examined the record and find no merit in this argument.

The final contention of the defendant is that in the interest of justice his sentence should be reduced.

The record shows that the trial judge relied on read-in charges, *Austin v. State* (1971), 49 Wis. 2d 727, 732, 183 N. W. 2d 56; the past record of defendant, *Brown v. State* (1971), 52 Wis. 2d 496, 500, 501, 190 N. W. 2d 497; his unalterably poor behavior patterns, *Triplett v. State* (1971), 51 Wis. 2d 549, 553, 187 N. W. 2d 318; the presentence investigation report, *State v. Schilz* (1971), 50 Wis. 2d 395, 401, 184 N. W. 2d 134; and the necessity for protection of the public, *Embry v. State* (1970), 46 Wis. 2d 151, 157, 174 N. W. 2d 521. In addition, he also considered the need to avoid disparity in sentencing, and the exemplary value of the sentence on persons "similarly inclined to commit crimes," *State v. Midell, supra,* page 527.

In view of the discretion of the trial court with respect to determinations on sentences, and the careful record compiled by the trial court reflecting consideration of a number of appropriately relevant factors, we find no abuse of discretion in connection with the length of sentence imposed.

*By the Court.*—Order affirmed.