STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas M. EVERS, Defendant-Appellant-
Petitioner.

Supreme Court

*No. 86–0413–CR. Argued April 1, 1987.—Decided June 22, 1987.*

(Also reported in 407 N.W.2d 256.)

For the defendant-appellant-petitioner there was a brief in the court of appeals and oral argument by *Paul M. Cornett,* Little Chute.

For the plaintiff-respondent the cause was argued by *William Gansner,* assistant attorney general, and a brief filed in the court of appeals by *M. Cathleen Huber,* assistant district attorney, Appleton.

HEFFERNAN, CHIEF JUSTICE. This is a review of an unpublished court of appeals decision dated August 19, 1986, which affirmed a judgment of

conviction of the circuit court for Outagamie county, Nick F. Schaefer, circuit judge, convicting Thomas M. Evers of the crime of misdemeanor theft of a vehicle and imposing a sentence of two years as a repeat offender.

On this review the defendant asserts that he was prejudiced by the introduction of evidence of prior crimes, which evidence, he asserts, was not admissible under the exceptions provided by sec. 904.04(2), Stats., and was therefore utilized for the purpose specifically barred by sec. 904.04(2), "to prove the character of a person in order to show that he acted in conformity therewith." He also asserts that the error in the admission of this testimony was not harmless.

We agree that the admission of the prior crimes evidence was erroneous, but we conclude that, in the context of the entire record, the error was harmless. Accordingly, we affirm the decision of the court of appeals which upheld the conviction.

It is also asserted that the trial judge abused his discretion in imposing a two-year sentence of imprisonment, because he had not sufficiently stated his reasons for imposing the sentence and that, therefore, in the event the conviction is sustained, the defendant asks that the cause be remanded for the imposition of a proper sentence. After a complete examination of the entire record and transcript of trial and the sentencing hearing, we conclude that the sentence was imposed in the exercise of appropriate judicial discretion. The sentence is affirmed.

The facts show that Tom Evers and two other persons removed a race car from the track of the Wisconsin International Raceway in Outagamie county in the early evening of September 25, 1984.

The vehicle had been raced by its owner, Doug Brown, at the raceway on September 23, 1984. After the race, Brown left the vehicle at the track, intending to pick it up at a later time. When he arrived to do so on the evening of September 25, 1984, at about 9:45 p.m., the vehicle was missing.

Investigation revealed that the vehicle had been towed away by the joint efforts of the defendant Tom Evers, his brother Joseph Evers, and Jeff Vandenberg. Following investigation, all these persons were charged with theft. Only the charge against Tom Evers is involved in this appeal.

Evers' defense at trial was that he was not guilty of theft, charged in sec. 943.20(1)(a) and (3),[1] because he believed the damaged car was abandoned property and, hence, he could not have the requisite intent to deprive the owner of possession of the property.

Evers attempted to adduce evidence at trial that would support his lack of culpable intent. He asserted that there had been a public announcement that drivers were to remove their vehicles within two days after the race or they were considered to be abandoned. There was overwhelming contrary testimony that the announcement made was not to the effect that the vehicles were to be considered ownerless after

[1]Sec. 943.20(1)(a), Stats., provides:

> **Acts.** Whoever does any of the following may be penalized as provided in sub. (3):
> (a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of such property.

Subsection (3) provides that theft of property worth $500 or less is a class A misdemeanor. Doug Brown's car was worth no more than $300.

the passage of two days but that such vehicles then became the property of the speedway and would be turned over to a salvage yard. We need not finally resolve the effect of this announcement for, when the owner of the car, Doug Brown, returned within the two-day period, the vehicle had already been picked up by Tom Evers (Evers) and his companions. It does appear, however, that the jury found that there was no credible evidence that would lead to the conclusion that, after the lapse of two days, the vehicle was ownerless. It is clear from the evidence that the vehicle either belonged to the original owner or to the race track.[2]

Although the evidence is rather clear that a reasonable person would not, on the basis of the evidence in respect to the public announcement, have believed that the property was ownerless or abandoned, in a criminal case of this sort, the test is the subjective intent of the accused person.[3] The defendant sought to convince the jury that, on the basis of his interpretation and recollection of the announcements and his knowledge of the practices of the race track, he could not have intended to deprive the owner of possession.

Evers' defense was quite specific. He admitted hauling the car away but argued that he believed the car to be abandoned. Thus, the only issue was Evers' intent or knowledge, *i.e.,* did he intentionally steal the car knowing it belonged to another or did he believe the car was abandoned.

---

[2]The orders for restitution required payment to Doug Brown. Hence, it appears that the court concluded that the property right remained in Brown.

[3]We do not here deal with the type of conduct that *per se* raises a presumptive intent.

Only evidence to show his intent or knowledge was relevant to the disposition of the contested issue in the case. To assist in its proof of intent, the state decided to introduce evidence of prior crimes of theft. Before trial, it gave notice to the defendant and to the court that it would introduce such evidence on rebuttal in the event the defendant asserted the defense of lack of intent. The prosecutor asserted that such evidence would be introduced only for the purpose of showing intent and not to show that, because the defendant had previously committed theft, he therefore had the propensity to commit the presently charged crime.[4]

During trial the defense of lack of intent was raised and the state, true to its word, in rebuttal offered evidence of one conviction and three read-in charges dating from 1982. They involved incidents which occurred in 1980. The only information given the judge and the jury was:

> "[T]hat on December 14, 1982, Mr. Evers was convicted of an offense involving theft. The offense occurred on ... September 2, 1980, and he was convicted of that theft offense. There was additionally three additional counts of theft were dismissed

[4]At the pretrial conference, the prosecutor made the following statement:

"I believe the fact that he has broken into and has been convicted of offenses and made confessions to those offenses where he has broken into different residences in the past with an intent to steal and, in fact, was convicted and agreed to the read-in of several other counts where he did intentionally take property from another individual with the intent to deprive that person is relevant to the issue of whether he could have mistakenly believed that this property belonged to him and also whether there was an intent to deprive the person which is one of the considerations with respect to the issue of mistake."

and read in for sentencing purposes, one of November 20, 1979, alleging theft of scrap metal, one of March 20, 1980, alleging theft of scrap metal, and one of September 2, 1980, alleging theft of car batteries."

Defense counsel objected. Out of the presence of the jury, he stated that the convictions had occurred more than three and one-half years ago and were of little probative value for any purpose. Additionally, he stated:

"The incidents are quite different and there has been no showing that the circumstances were those similar to those in the present where the property was kept for a period of time in an area which anybody could gain access to ... [and] where announcements had been made that property was going to be turned over to other people if not claimed ... I think the evidence would tend to simply show that the defendant was a thief and an evil person and that's precisely the sort of impression that 904.04 is supposed to prevent a jury from receiving ...."

The court decided to admit the other acts evidence. It found the evidence to be probative on the issue of Evers' intent or lack of mistake. In the presence of the jury, the state asked the court to take judicial notice of the fact that Evers had been convicted of theft in 1982 and that three other theft charges had been dismissed and read-in at the time Evers was sentenced for that offense. Although the prosecutor stated that the three read-ins were for theft of scrap metal and batteries, the jury was not told what Evers had stolen that had resulted in the actual conviction. In addition, no mention was made of the circumstances surrounding any of the four prior acts. The

jury was simply informed of the fact of the conviction and the read-ins. The court then cautioned the jury that the prior acts were admitted solely on the issue of intent and lack of mistake. During her closing argument, the prosecutor told the jury that the prior acts and conviction were "society's notice" to the defendant that he had better determine that he had a right to take property before he in fact took it. The trial court included a cautionary instruction on other crimes evidence in the general instructions read to the jury.

Conviction followed, and Evers was sentenced to a two-year prison term under the repeat-offender provisions of sec. 939.62(1)(a), Stats. On appeal, the court of appeals held that the prior crimes evidence was properly admitted and sentence was appropriate.

The only rationale for its conclusion in respect to prior crimes was expressed tersely and without explication. The court of appeals stated:

> "[I]t is not necessary to know more details of the prior thefts to draw a relevant connection between them and the present offense. Each incident involved a violation for the offense of larceny in violation of sec. 943.20(1)(a) .... There was therefore a sufficient showing that the prior incidents were similar in time, place, and circumstance to justify admissibility." Opinion at page 3.

It is an accepted principle that evidence of a defendant's prior criminal acts is not admissible, in the course of a prosecution for a subsequent offense, in order to show that the defendant was a "bad person" with a propensity to commit crimes and that therefore he must have committed the charged offense.[5] Such

[5]*See, for example,* Slough & Knightly, *Other Vices, Other Crimes,* 41 Iowa L. Rev. 325 (1956):

evidence may be admitted however, when it is relevant to such issues as a defendant's motive, plan, knowledge, identity, or intent in committing the charged offense.[6]

Wisconsin's prior acts rule is set out in sec. 904.04(2), Stats.:

> **(2) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The rule and its exceptions have been addressed in numerous recent cases. The exceptions to the prohibitions of sec. 904.04(2), Stats., encompass the very issues that are significant in this case—intent, knowledge, or absence of mistake. The real question,

---

Strongly entrenched among many American traditions is the concept that man should not be judged strenuously by reference to the awesome spectre of his past life. When one faces trial for a specific crime, he should not be held to answer for the scandal that his earlier vices would most certainly produce. Though he has committed many crimes under circumstances which would increase the probability that he has committed the crime charged, it remains an unalterable fact that members of the jury, of nobler root, will lend excessive weight to a record of crime. Evidence of other crimes and misdeeds is not excluded because of an inherent lack of probative value, but is withheld as a precaution against inciting prejudice. Adherents to the common law have for centuries boasted of a certain Anglo-American solicitude for the prisoner, contrasting their accusatorial methods with the inquisitorial devices of continental jurists.[1] [Footnote omitted.]

[6]*See, for example, McCormick on Evidence,* sec. 190, p. 557 (3d ed. 1984). *See also,* Slough & Knightly, *Other Vices, Other Crimes,* 41 Iowa L. Rev. 325, 326 (1956).

however, is to what extent do the prior instances tell us of the defendant's present intentions, other than to show the prohibited purpose that the defendant is a bad person and therefore has a propensity toward criminality.

In *State v. Spraggin,* 77 Wis. 2d 89, 94–95, 252 N.W.2d 94 (1977), this court discussed Wisconsin's prior acts rule:

> In Wisconsin the admission of evidence relating to other crimes, wrongs or acts of the accused is now governed by sec. 904.04(2), Wisconsin Rules of Evidence.
>
> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
>
> The general rule is therefore to exclude use of other misdeeds to prove character in order to prove guilt. The reason for the exclusion of such evidence was explained by our court in *Whitty v. State,* 34 Wis.2d 278, 292, 149 N.W.2d 557 (1967):
>
> "The character rule excluding prior-crimes evidence as it relates to the guilt issue rests on four bases: (1) The overstrong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts; (2) the tendency to condemn not because he is believed guilty of the present charge but because he has escaped punishment from other offenses; (3) the injustice of attacking one who is not prepared to demonstrate the attacking evidence is fabricated; and (4) the

confusion of issues which might result from bringing in evidence of other crimes."[4]

However, the statute provides exceptions to the general rule prohibiting evidence of other conduct, namely, such evidence is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Even if the evidence of other conduct is admissible under one of the exceptions, the trial judge must exercise his or her discretion to determine whether any prejudice resulting from such evidence outweighs its probative value. Sec. 904.03, Wis. Rules of Evidence;[5] *Whitty v. State,* 34 Wis.2d 278, 149 N.W.2d 557 (1967), cert. den. 390 U.S. 959, 88 S. Ct. 1056, 19 L. Ed.2d 1155; *Kwosek v. State,* 60 Wis.2d 276, 208 N.W.2d 308 (1973). [Footnotes omitted.]

Accordingly, other crimes evidence must be subjected to a two-step analysis before being admitted. First, the evidence must be introduced for the purpose of proving an element listed in sec. 904.04(2), Stats.[7] Then the evidence must be shown to be more probative than prejudicial.[8]

[7]It is arguable that the prior crimes evidence at issue in this case was of such little relevance on the issue of Evers' intent that it could have been excluded at this stage of the analysis. *See,* sec. 904.02, Stats. ("Relevant evidence generally admissible; irrelevant evidence inadmissible").

[8]*See, for example, McCormick on Evidence,* sec. 190, p. 565 (3d ed. 1984). McCormick explains:

When the sole purpose of the other crimes evidence is to show some propensity to commit the crime at trial, there is no room for ad hoc balancing. The evidence is then unequivocally inadmissible—this is meaning of the rule against other crimes evidence.[54] But the fact that there is an accepted logical basis for the evidence other than the forbidden one of showing a proclivity for criminali-

As early as 1903, this court recognized the danger of allowing into evidence prior acts of the defendant. In *Paulson v. State,* 118 Wis. 89, 94 N.W. 771 (1903), this court discussed at length the reason for the general rule requiring exclusion of such evidence:

> From the time when advancing civilization began to recognize that the purpose and end of a criminal trial is as much to discharge the innocent accused as to punish the guilty, it has been held that evidence against him should be confined to the very offense charged, and that neither general bad character nor commission of other specific disconnected acts, whether criminal or merely meretricious, could be proved against him. This

ty may not preclude the jury from relying on a defendant's apparent propensity toward criminal behavior.[55] Accordingly, most recent authority recognizes that the problem is not merely one of pigeonholing, but of classifying and then balancing.[56] In deciding whether the danger of unfair prejudice and the like substantially outweighs the incremental probative value, a variety of matters must be considered, including the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.[57] [Footnotes omitted.]

*See, also,* Weinstein & Berger, *Weinstein's Evidence,* sec. 404[08] (1985). They observe:

"... counsel must be prepared to 1) identify the consequential fact to which the proffered evidence of other crimes, wrongs or acts is directed ... 2) prove the other crimes, wrongs or acts ... and 3) articulate precisely the evidentiary hypothesis by which the consequential fact may be inferred from the proffered evidence ... Evidence which passes muster up to this point must, in addition, satisfy the balancing test ... which requires the probative value of the other crimes evidence to outweigh the harmful consequences that might flow from its admission."

435

was predicated on the fundamental principle of justice that the bad man no more than the good ought to be convicted of a crime not committed by him. An exception is indulged where other crimes are so connected with the one charged that their commission directly tends to prove some element of the latter—usually guilty knowledge, or some specific intent. (118 Wis. at 98–9)

The probative value of other crimes evidence, which is to be determined as part of the second step of the admissibility analysis, depends on the prior acts' "nearness in time, place and circumstances to the alleged crime or element sought to be proved." *Whitty v. State,* 34 Wis. 2d 278, 294, 149 N.W.2d 557 (1967); *State v. Rutchik,* 116 Wis. 2d 61, 68, 341 N.W.2d 639 (1984) (citing *Whitty*). In order to get to the second phase of the test, the prior acts should have some similarity to the offense for which the defendant is being tried.

Where a defendant's intent or knowledge, as in the instant case, is an element of the crime charged, other acts evidence may be introduced on that issue if such evidence is more probative than prejudicial. Most commentators treat knowledge and intent as separate categories, although it seems difficult to make a precise distinction and there appears to be some overlap.[9] Because Evers' defense that he believed Doug Brown's car was abandoned and thus available for him to take appears to involve both intent (in the sense that intent is an element of theft—the item

---

[9]*See,* Weinstein & Berger, *Weinstein's Evidence,* sec. 404[12] (1985) ("There is substantial overlap between the category of intent and knowledge ...." P. 404–88).

must have been taken with an intent to deprive another of it) and knowledge (in the sense that Evers claims he did not know he could not take it), both exceptions to the prior crimes rule are relevant to this review.

On the issue of intent, Weinstein and Berger comment that "evidence of another crime which tends to undermine defendant's innocent explanation for his act will be admitted" (p. 404–84) because "the oftener a *like* act has been done, the less probable it is that it could have been done innocently." (Emphasis supplied.) (PP. 404–84 – 404–87.) Repetition of an act implies that a defendant "must have arrived at a mental state inconsistent with innocence by the time of the charged act." *Id.* These commentators note, however, that the party offering the other crimes evidence must convince the court that the proffered evidence alters the probability that the defendant had the requisite state of mind at the time he committed the charged offense. They observe that "[c]ourts often stress the similarity of the charged and uncharged acts, and sometimes go so far as to say that in order to be probative the [prior] offense must be similar to the charged act in the sense that the essential physical elements of the two crimes must be alike." *Id.* at 404–88 and 404–90.

Wigmore explains that intent involves knowledge, hostile feeling, or "the absence of accident, inadvertence, or casualty—a varying state of mind which is the contrary of an innocent state of mind ...." *See,* 2 Wigmore, *Evidence,* sec. 300, p. 238 (Chadbourn rev. 1979). He discusses in detail the theory behind the intent exception to the general prohibition on admissibility of prior acts evidence. Such evidence is admissible, he states, because of the

"doctrine of chances ... [the idea] that an unusual and abnormal element might perhaps be present in one instance, but that the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them."

"Thus, if A while hunting with B hears the bullet from B's gun whistling past his head, he is willing to accept B's bad aim or B's accidental tripping as a conceivable explanation; but if shortly afterwards the same thing happens again, and if on the third occasion A receives B's bullet in his body, the immediate inference (i.e., as a probability, perhaps not a certainty) is that B shot at A deliberately; because the chances of an inadvertent shooting on three successive similar occasions are extremely small; or (to put it in another way) because inadvertence or accident is only an abnormal or occasional explanation for the discharge of a gun at a given object, and therefore the recurrence of a similar result (i.e., discharge towards the same object, A) excludes the fair possibility of such an abnormal cause and points out the cause as probably a more natural and usual one, i.e., a deliberate discharge at A. In short, similar results do not usually occur through abnormal causes; and the recurrence of a similar result (here in the shape of an unlawful act) tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act; and the force of each additional instance will vary in each kind of offense according to the probability that the act could be repeated, within a limited time and under given circumstances, with

438

an innocent intent." 2 Wigmore, *Evidence,* sec. 302, p. 241 (Chadbourn rev. 1979).

The similarity of the prior acts to the charged offense is the crucial factor that makes other acts evidence probative on the issue of a defendant's intent. Wigmore writes:

> "[I]t is at least necessary that prior acts should be *similar.* Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the essence of this probative effect is the likeness of the instance." *Id.* at sec. 302, p. 245.

Wigmore is critical of the tendency of some courts to err in favor of the prosecution, noting the "numerous instances of actual violation of the character rule by admitting evidence of *dissimilar* crimes claimed to prove intent." *Id.* p. 247 n. 5. Unless the crimes are similar, "the inference of intent arises only if the inference of bad character is first drawn." *See, id.* p. 247 n. 5.

Wisconsin cases have also discussed the intent exception. In *State v. Spraggin,* 77 Wis. 2d 89, 252 N.W.2d 94 (1977), the court found that possession of marijuana (the prior crime) was not probative of intentionally aiding and abetting the delivery of heroin (the charged offense). 77 Wis. 2d at 97. Instead, it could only show that the defendant had dealt in drugs before and was likely to do so again. Thus, the prior crime evidence went only to the prohibited issue of propensity. 77 Wis. 2d at 97 n. 6. The prosecution had failed to connect the prior crime to the charged crime or to explain or demonstrate why the prior crime made an element of the charged offense more likely. *See,* 77 Wis. 2d at 96.

As for the knowledge exception, Weinstein and Berger observe that the evidentiary justification here is similar to the justification for allowing other acts evidence to show intent. It is unlikely that repeated instances of behavior, even if originally innocent, will not have resulted in a defendant having the requisite state of knowledge (*i.e.,* awareness that a particular behavior constitutes a criminal act) by the time of the charged crime. Weinstein & Berger, *Weinstein's Evidence,* sec. 404[13], p. 404–100 (1985). They observe that, in the case of an attempt to introduce other acts evidence on the issue of knowledge, "a detailed analysis is needed to see if the [other acts] evidence affects the probability of the defendant's having the requisite knowledge." *Id.,* at 404–105. Otherwise there is a risk that the evidence will establish no more than the defendant's propensity to commit crimes.

Wigmore explains the theory under which prior acts are admissible to show a defendant's knowledge:

> "When fact X is used to show a person's knowledge of fact A, it is assumed (a) that through fact X there probably was received an impression by the person; and (b) that this impression would probably result in notice of warning of fact A." 2 Wigmore, *Evidence,* sec. 301, p. 239 (Chadbourn ed. 1979).

The rationale which permits the admission of this type of evidence is that:

> "The other act will probably have resulted in some sort of warning or knowledge; this warning or knowledge must probably have led to the knowledge in question." *Id.*

440

For example:

"[I]f A's knowledge of the stolen character of a bar of iron is to be shown, and the fact is offered that he has also received and possessed a stolen bicycle, then our inference must assume (a) that A's receipt of the bicycle was under such circumstances as to suggest its vendor or pledgor to be a thief, or as to result in a reclamation by the owner and a warning to the defendant; so that (b) when the bar of iron was offered to A, by the same or another vendor or pledgor, the circumstances were such that the former transaction would naturally suggest that this bar of iron was also stolen." *Id.*

Thus, the prior act must have resulted in the defendant being more likely to have the state of knowledge that is in dispute in the charged case. Because the admission of the evidence did not make the state of the defendant's intent or knowledge more likely, the trial court erred in admitting the prior acts evidence in the present case. There was no testimony, either in the presence of the jury or before the trial judge, as to the similarity of the prior acts and the charged offense. The record reveals nothing at all regarding the theft for which Evers was convicted in 1982. We do not know what was taken, and we do not know the circumstances under which the theft took place. As for the three read-ins, we know only in a general sense what was taken. We know, and the jury was told, that Evers was charged with taking scrap metal twice and batteries once. We do not know the circumstances under which these items were taken.

Evers' defense was lack of intent to deprive an owner of a possessory interest, or the corollary theory that he mistakenly believed that the property was abandoned, because he lacked full knowledge of the facts.

441

In view of the nature of this defense, prior crimes evidence had to be probative of more than the fact that Evers was a thief who was likely to steal again and the evidence had to prove more than the fact that, having been convicted of an intent crime in the past, he therefore had the intent to steal in the instant case. The evidence had to negate the defense of lack of intent or knowledge. Only evidence showing that Evers had previously taken property left in an open area, which he claimed to have been abandoned and for which he was convicted of theft, would be relevant to, or probative of, the issue of Evers' intent or knowledge when he took Doug Brown's car. Such evidence would have tended to show that Evers did not have the lack of intent or knowledge that he claimed to have had. Perhaps the prior crimes, if their details had been fully explained, would have shown just that, but the prosecution here failed to explain to the trial court any of the circumstances surrounding the other crimes. That a person previously stole an item from a store, picked a person's pocket, took an item from private property, or stole scrap metal or batteries—all "intent" crimes—says nothing about the truth or falsity of a person's present claim that an item left behind by its owner on public or open property was taken with the belief that it had been abandoned.

There is no evidence of record that the prior crimes were at all factually similar to the offense with which Evers was charged. Absent any mention of similarity or discussion of the reasons why the prior crimes were relevant to the issue of intent or knowledge, the prior acts evidence went only to Evers' propensity to commit theft. Such propensity evidence

is prohibited under sec. 904.04(2), Stats., and is inadmissible.

The prior acts were not probative on the issue of Evers' intent. Similarity of the prior acts and the charged offense are critical for purposes of applicability of the intent exception. We repeat that this is because the intent exception is based on the "doctrine of chances" or the "improbability of a like result being repeated by mere chance." *See*, Wigmore, *supra*, sec. 302, p. 245. If a like occurrence takes place enough times, it can no longer be attributed to mere coincidence. Innocent intent will become improbable. Such an inference cannot reasonably come into play, however, where the circumstances surrounding the prior acts are neither known nor mentioned and only the fact of conviction is revealed to the jury. There is no way that the jury could have evaluated the probability of a like result being repeated, or the effect of the prior crimes on Evers' mental state when he took the car, without knowing something about the prior crimes. Beyond the barebones statement that there was a theft conviction and three read-in thefts—two of scrap metal and one theft of a battery—the trial judge was kept in ignorance of the facts upon which his discretion was to be exercised.

Nor did the prosecutor demonstrate that the prior acts were probative of Evers' knowledge. For the knowledge exception to come into play, the prosecution must show that the circumstances surrounding the prior crimes indicate that the defendant acquired certain knowledge (or a state of knowledge) that is inconsistent with the defendant's innocence in the charged offense. The prosecution never explained what knowledge Evers had acquired as the result of the prior acts. It could not have done so, because even

the prosecutor apparently knew little or nothing about the prior acts. The knowledge acquired must clearly be more than the knowledge that one should not steal or that it is wrong to commit crimes. Here, the knowledge at issue and sought to be proved by the state is that property left out in a public place is not necessarily abandoned or, more specifically, that Doug Brown's car belonged to someone and was not available for Evers to take. The prosecution was required to show that the prior acts were of a factual nature that resulted in Evers having received notice that he could not take "potentially abandoned" property without fully determining his right to do so. The prosecution never claimed, or presented facts from which it could reasonably be inferred, that Evers had learned anything about taking "abandoned" property by being convicted of the prior offenses.

When we apply these standards and the rational basis justifying the exceptions pertinent to intent, knowledge, and absence of mistake, it is apparent that the trial court erred in admitting the prior crimes evidence and that the court of appeals glossed over that error without critical analysis.

We also comment on the prosecutor's justification to the jury of the use of prior crimes evidence. She stated:

> "The fact that the defendant knows and has been convicted before and has been told by the public or told by society that you can't take what belongs to someone else, that you better make sure that you've got a right to it before you take it, that's why that testimony was offered at this time."

This argument, given the paucity of facts concerning the exact nature of the prior theft conviction, is merely to argue that which is forbidden in the law—that a thief is to be held to different and higher standards on the guilt phase of a crime than is a person with an unblemished record. The state here, while it might well have intended not to use prior crimes to show propensity, nevertheless did so. Also, the state, through inadvertence, may have failed to show that "abandoned" property was involved in the prior thefts, but by failing to do so, the state made it impossible for the judge to evaluate the extent to which previous conviction for theft was in any way relevant to, or probative of, the defendant's intent in the present case. The judge therefore could not determine whether the prior acts evidence was more prejudicial than probative. Absent such a showing, the prior crimes evidence should have been summarily excluded.

Finally, we have no way of knowing whether Evers' other crimes evidence put him on notice in the manner suggested by the prosecution. Had Evers been previously convicted of taking property that had been left out in a public place, he might indeed have been put on special notice that such property is not always available to be taken by whomever wants it. Had the facts surrounding the prior crimes been different, however, no such notice or knowledge regarding "potentially abandoned" property would have resulted. Unfortunately, the prosecution either failed to investigate or present the facts surrounding the prior acts. We do not know what type of "notice" was provided by the prior conviction and read-ins. Thus, the trial court erred in ruling that the prior crimes

evidence was admissible because the prior experience was in some way probative of his knowledge.

While we have no doubt that prior crimes evidence was improperly admitted, the question remains whether such error was harmless. We conclude that it was.

In the recently decided case of *State v. Dyess,* 124 Wis. 2d 525, 370 N.W.2d 222 (1985), we discussed harmless error and outlined the test for harmless error:

> "We conclude that, in view of the gradual merger of this court's collective thinking in respect to harmless versus prejudicial error, whether of omission or commission, whether of constitutional proportions or not, the test should be whether there is a reasonable possibility that the error contributed to the conviction. If it did, reversal and a new trial must result. The burden of proving no prejudice is on the beneficiary of the error, here the state. *Billings,* 110 Wis. 2d at 667. The state's burden, then, is to establish that there is no reasonable possibility that the error contributed to the conviction." 124 Wis. 2d at 543 (footnote omitted).

In *Dyess,* the court observed that:

> "Where the error affects rights of constitutional dimension or where the verdict is only weakly supported by the record, the reviewing court's confidence in the reliability of the proceeding may be undermined more easily than where the error was peripheral or the verdict strongly supported by evidence untainted by error." 124 Wis. 2d at 545.

Thus, a reviewing court must look to the "totality of the record" and determine whether the error contributed to the trial's outcome.

Because there is overwhelming evidence, even absent the prejudicial and erroneously admitted prior crimes evidence, to support Evers' conviction, the trial court's error was harmless in the sense that the evidence of guilt was clearly sufficient. Conversely, there is no reasonable possibility that the prior crimes evidence contributed to the conviction or that a trial without the evidentiary error would have a different result.

Also, it should be noted that there was little exploitation by the state of the erroneously admitted evidence. The prior crimes record did not come in until rebuttal, and then the prosecutor merely asked that the court, by judicial notice, allow the prior crimes record to be brought to the attention of the jury. No elaboration was attempted. There was merely the recitation that, in 1982, Evers was convicted of one count of theft, nature unstated, and upon his plea to that theft count, three read-in thefts were dismissed, two for theft of scrap metal and one for theft of an automobile battery.

In principal oral argument to the jury, the only reference to the prior crimes was the statement, "He's been in trouble for theft before, but he went ahead and did it anyway." The reference to the prior crimes in the state's rebuttal argument appears earlier in this opinion.

Additionally, the trial court twice cautioned the jury about the proper and improper uses of prior acts evidence in the course of the one-day trial. Immediately after the prosecutor asked the court to take judicial

notice of the prior conviction and read-ins, the court stated:

> "... and I will tell you, members of the jury, that the evidence is admitted solely on the issues of intent and the absence of mistake or accident. And I will give you a complete instruction regarding that matter very shortly because I don't think it's necessary to tell you the full instruction now and then to repeat it in a few minutes' time. I'd ask that you look for that instruction as I will give it to you then as soon as I give you the complete instructions."

The trial court read that jury instruction on other crimes evidence before the jury began its deliberations. That instruction recited:

> "Evidence has been received regarding other crimes committed by the defendant for which he is not on trial. Specifically, evidence has been received that the defendant has been involved in prior thefts. Such evidence was admitted solely on the issues of intent and the absence of mistake or accident. You may not consider such evidence to conclude that the defendant has a certain character or a certain character trait and to further conclude that he acted in conformity with that trait or character with respect to the offense charged in this case. If you find that the defendant did such act, you must not conclude that it is proof that he committed the offense with which he is now charged. The evidence was received on the issues of intent; that is, whether the defendant acted with a state of mind that's required for this offense. I have instructed you on the particular state of mind required before the defendant may be found guilty of the offense charged. The evidence also has been received on the issue of absence of

448

mistake or accident; that is, whether the defendant acted with the state of mind required for the offense. And I have instructed you regarding the state of mind required to be shown.

"So you may consider the evidence of other crimes by the defendant only for the purposes I have described assigning the evidence such weight as you determine it deserves. You must not consider this evidence to determine whether the defendant is probably guilty of this offense because of his prior conduct."

These cautionary instructions reduce the risk that the jury would find Evers guilty simply because he was a "bad person" who had previously committed crimes. Had the evidence been properly admissible (*i.e.,* more probative of Evers' intent than prejudicial), these cautionary instructions nevertheless would have been required. Character evidence must always face the test of multiple admissibility. Thus, even if the evidence were highly probative of intent in the instant case and therefore admissible, it is necessary for the jury to be informed that the prior crimes rule allows the evidence to be considered only as it is relevant to, and probative of, an element of the crime being charged and is not to be considered as evidence of bad character evincing a propensity to commit the crime presently being charged. In addition, the leeway of discretion in determining whether the evidence is more probative than prejudicial lies in the direction of the rule, rather than the exception. McCormick, *Law of Evidence,* sec. 158 at 332 (1954 ed.). Thus, the court should "exclude the other crimes evidence, even when it has substantial independent relevancy, when in [its] judgment its probative value for this purpose is outweighed by the danger that it will stir such passion

in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial." *Id.* at 332–33.

The record shows that the prior crimes evidence did not loom large in the state's presentation of the case. On the other hand, the evidence of guilt was overwhelming. There was evidence that one of the three persons who removed the car from the raceway was told by the track manager not to do it. The owner's name, Doug Brown, was painted on the car. The car was operable despite dents and scrapes. From this the jury could infer that Evers knew that the car was not "abandoned." When Evers was arrested, he acknowledged that what he had done was wrong, but said he had done it for a friend who wanted a car. There was a full acknowledgment that he physically participated in the removal of the car. In the final analysis, the failure of Evers' defense resulted not from the introduction of the nonprobative prior crimes evidence, but from the lack of credence that the jury surely placed in his explanation, quite apart from the evidence of the previous thefts that had nothing to do with the charged taking of allegedly abandoned property. It also should be pointed out that defense counsel at trial ably stressed the fact that, where there were no circumstances stated that would demonstrate a similarity between the previous thefts and the instant one, the prior criminal record proved nothing about intent or mistake in stealing or removing "abandoned" property. The defense counsel stated that whatever intent Tom Evers had at the time of the 1980 thefts had nothing to do with "what was going through Tom's mind in September of 1984."

Thus, we conclude the evidence was such that a jury, in the complete absence of the tainted prior crimes testimony, would have returned a verdict of guilty. A careful review of the record indicates that a retrial without the erroneously admitted testimony would yield the same result. Applying the harmless error test of *State v. Dyess,* 124 Wis. 2d 525, 370 N.W.2d 222 (1985), there is no reasonable possibility that the error contributed to the conviction. The error was harmless beyond a reasonable doubt. Accordingly, we affirm the conviction. There obviously was some prejudice, for all the evidence showed was that Evers had a prior record, *i.e.,* that he was of questionable character. But the prejudice did not rise to the stature requiring a reversal for prejudicial error. The evidence was probative of nothing relevant to the issue of intent in the present case.

Additionally, the defendant complains that the prison sentence of two years evinces an abuse of discretion, when the other participants in the crime received minimum sentences. He also asserts that consideration should have been given at sentencing to the fact that he would have reaped no monetary reward as the result of this theft—he did it for a friend.

A trial judge in this state must give the reason for imposing a particular sentence. *State v. Harris,* 119 Wis. 2d 612, 623, 350 N.W.2d 633 (1984); *Melby v. State,* 70 Wis. 2d 368, 383, 234 N.W.2d 634 (1975). The judge must consider, in the course of deciding what sentence to impose, such factors as the defendant's criminal record, his attitude and demeanor, whether he shows remorse, the length of time needed for

rehabilitation, and the need for protection of society. The weight to be attached to such factors, however, is within the discretion of the trial court. *Harris v. State,* 75 Wis. 2d 513, 520, 250 N.W.2d 7 (1977). Upon review this court may vacate a sentence only if it finds that the trial court abused its discretion. *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971).[10] Even if an abuse of discretion is found, *McCleary* requires a reviewing court to "search the record to determine whether in the exercise of proper discretion the sentence imposed can be sustained" before vacating the sentence. 49 Wis. 2d at 282.

---

[10]In *McCleary,* this court discussed in considerable detail the manner in which sentences were to be reviewed by appellate courts:

> It is thus clear that sentencing is a discretionary judicial act and is reviewable by this court in the same manner that all discretionary acts are to be reviewed.
>
> In the first place, there must be evidence that discretion was in fact exercised. Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning. This process must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards. As we pointed out in *State v. Hutnik* (1968), 39 Wis. 2d 754, 764, 159 N.W.2d 733, ". . . there should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth." 49 Wis. 2d at 277.
>
> We have frequently stated that we will remand for sentencing or modify the sentence only when an abuse of discretion clearly appears. By this we mean that this court should review and reconsider an allegedly excessive sentence whenever it appears that no discretion was exercised in its imposition or discretion was exercised without the underpinnings of an explained judicial reasoning process. Where the judicial sentencing discretion is exercised on the basis of clearly irrelevant or improper factors, an abuse of discretion also results. 49 Wis. 2d at 278.

Evers contends that the trial court abused its discretion by failing to provide reasons for its decision to sentence him as a repeater. However, a review of the sentencing transcript shows that the trial court's remarks at sentencing set forth why the court imposed a two-year prison term. Because there was neither an abuse of discretion nor a lack of support for the sentence in the record, the sentence will not be vacated.

In the course of its remarks at sentencing, the trial court indicated the various factors that it had considered and found to be relevant. These include Evers' culpability,[11] his poor performance while on probation and parole for a previous offense,[12] the court's belief that Evers was becoming a drifter, with little ambition or interest in planning for his future,[13] the need for protection of society,[14] and Evers' prior criminal record.[15] After consideration of these factors, the court agreed with the parole agent's recommendation that Evers receive a two-year prison term.

[11]"[I]t's also indicated you were entirely aware based upon the appearance and condition of the vehicle it wasn't one which was available for anyone to take and nevertheless you did get involved ... which ... constitutes a commission of the serious offense."

[12]"[Y]ou have had any number of chances for participation in community service programs" and "You were on probation ... and that didn't work out and probation was revoked and even while on parole this offense itself was committed by you."

[13]"[Y]ou are going to have to take some time and give some thought as to what you are going to do."

[14]"[T]he people in the community have the right to be protected from this kind of activity."

[15]"[Y]ou are engaging [in criminal activity] with too much frequency."

Thus, the trial court stated its reasons for agreeing with the parole agent's recommendation and for imposing a two-year sentence. Even had the court not done so, there was sufficient evidence presented at sentencing to justify sentencing Evers as a repeater. Nor do we consider the sentence to be harsh or disproportionate to the crime. There was no abuse of discretion. We affirm the decision of the court of appeals that upheld the sentence imposed.

While we cannot uphold, or give our stamp of approval to, the rationale employed by the court of appeals in its conclusion that the prior crimes evidence was admissible, we nevertheless affirm the decision of the court of appeals because the erroneous admission of the prior crimes evidence was harmless and because the sentence imposed, as the court of appeals correctly concluded, was imposed only after the proper exercise of discretion.

*By the Court.*—Decision affirmed.

STEINMETZ, J.   (*concurring*). I write separately because the majority view of what "other crimes" evidence is relevant is too narrow. The "other crimes" evidence introduced in rebuttal was clearly thefts, and the crime charged here is a theft. The elements of the prior crimes matched the elements of the crime charged. There is no need for all the factual circumstances to match for admission of this evidence.

I would find that the trial court did not abuse its discretion in admitting such evidence on the issue of intent.