ANN WALSH BRADLEY, J.
¶ 57. (dissenting). The State of Wisconsin seeks review of an un *613 published per curiam opinion of the court of appeals that reversed the defendant's conviction.
¶ 58. This is not a close case on the relevant issue of law, that is, whether the circuit court committed error in excluding key witness testimony necessary to support the defendant's version of events. Rather, this is a case where both parties, the court of appeals, the majority, and I all conclude that it was error.[1]
¶ 59. I part ways with the majority, however, when it concludes that the error is harmless. Its conclusion is based on the faulty assertion that there is "little meaningful difference" between the probative value of Venske's excluded testimony and the probative value of Officer Nachtigal's admitted testimony. Majority op., ¶ 32.
¶ 60. To support this conclusion the majority has to ignore both logic and the law of evidence. When an out-of-court statement is admitted to show the event occurred but specifically is not admitted for the truth of the matter asserted, its probative value in ascertaining the truth of the matter asserted is minimal, if any. Contrary to the majority's assertion, it is meaningfully different in probative value than relevant in-person testimony which is offered for the truth of the assertion.
¶ 61. This was a he-said — she-said case. The excluded evidence was the only evidence available to corroborate either version of the events — and it corroborated the defendant's version.
*614 ¶ 62. After reviewing all of the relevant factors in a harmless error analysis, I conclude that the exclusion of key testimony supporting the defendant's credibility was not harmless. Accordingly, I respectfully dissent.[2]
I
¶ 63. Hunt was charged with showing an obscene video on his cell phone to his stepdaughter. She told police that the video had been sent by Hunt's friend, Venske. Hunt testified that he never had a video like the one she described and that he had not received any such video from Venske. The circuit court excluded Venske's corroborating testimony that he never sent any videos to Hunt.
¶ 64. The majority determines as a threshold matter that the circuit court erred in excluding Venske's relevant testimony "that he had never sent Hunt any videos, including the video of sexual intercourse." Majority op., ¶ 25. It acknowledges that "Venske's testimony was directly relevant to Hunt's theory of defense" because "Venske's excluded testimony would have corroborated Hunt's testimony and lent credibility to Hunt's version of events." Nevertheless, it concludes that the error was harmless. Id.
¶ 65. The majority notes that although the excluded testimony had value in corroborating Hunt's testimony, that purpose "was effectively achieved by *615 the admission of Officer Nachtigal's testimony." Id., ¶ 35. Specifically, it determines that Officer Nachtigal's testimony that Venske told him that he had not sent Hunt the video "functionally served the same purpose as Venske's excluded testimony by corroborating Hunt's version of events." Id., ¶ 30. Even though the circuit court instructed the jury not to use the officer's testimony to determine "whether Venske actually sent something from his phone or not," the majority concludes that there was "little meaningful difference" between the probative value of Venske's excluded testimony and the probative value of Officer Nachtigal's admitted testimony. Id., ¶¶ 31, 32.
II
¶ 66. The majority's determination of harmless error rests primarily on its erroneous conclusion that Officer Nachtigal's testimony was essentially as valuable to the defense as Venske's excluded testimony would have been. Id., ¶¶ 10, 30-32. Undermining the majority's conclusion is the fact that the jury was specifically instructed not to consider for the truth of the matter asserted Nachtigal's testimony about what Venske told him. The circuit court's instruction was detailed and unusually specific, and bears repeating in its entirety:
A witness is not allowed to tell us what somebody else told him to prove that it happened. But the officer, or any witness, is allowed to discuss other conversations simply to establish who said what to whom.
So, if somebody wants to prove that Mr. Venske —
[COUNSEL]: That is correct.
THE COURT: Did something or didn't do something, they either need to have a witness who saw him do it or have Mr. Venske come in and testify himself.
*616 When the Officer is being allowed to testify about this conversation, it's not to be used by you to determine whether Mr. Venske actually sent something from his phone or not.
It's being admitted simply so you understand the conversation that took place between these two gentlemen.
That's the best explanation I can give you for hearsay. You spend about three months on it in law school, and that's the nutshell version.
A statement is not hearsay if it's not used to prove the truth of the matter asserted, is the technical legal definition.
(Emphasis supplied.) It is difficult to imagine what else the circuit court could have done to communicate to the jury that it could not consider Officer Nachtigal's testimony as probative of whether or not Venske actually sent the video to Hunt.
¶ 67. In light of this detailed jury instruction, there is no logical way to reconcile the majority's suggestion that the jury could use Officer Nachtigal's testimony as probative in proving what Venske told him, with the court's instruction that it could not use it for that purpose. The court instructed: "it's not to be used by you to determine whether Mr. Venske actually sent something from his phone or not."
¶ 68. The only way to make any sense of the conclusion that the majority embraces is that the majority assumes that the jury did not heed the court's instruction. However, the jury is presumed to have followed the court's instructions. State v. LaCount, 2008 WI 59, ¶ 23, 310 Wis. 2d 85, 750 N.W.2d 780; see also State v. Gary M.B., 2004 WI 33, ¶ 33, 270 Wis. 2d 62, 676 N.W.2d 475 ("When a circuit court gives a *617 proper cautionary instruction, appellate courts presume that the jury followed that instruction and acted in accordance with the law."); State v. Poellinger, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990) ("[0]nce the jury has been properly instructed on the principles it must apply to find the defendant guilty beyond a reasonable doubt, a court must assume on appeal that the jury has abided by those instructions."). The majority undermines the presumption and calls into question whether the circuit court's instructions had any effect.
Ill
¶ 69. The majority's conclusion also rests on a misperception of the law of evidence. The majority mistakenly treats Officer Nachtigal's testimony about Venske's out-of-court statement, admitted to prove that a conversation occurred, as having essentially the same probative value as direct testimony from Venske. In his instruction to the jury, the circuit court correctly explained the difference.
¶ 70. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Wis. Stat. § 908.01(3). Here the statement was that Venske did not send Hunt the video. As the circuit court specifically instructed, this statement by Venske to Officer Nachtigal was not admitted into evidence for the truth of the statement. Rather it was admitted to explain how Officer's Nachtigal's investigation proceeded. State v. Wilson, 160 Wis. 2d 774, 779, 467 N.W.2d 130 (Wis. Ct. App. 1991) ("Where a declarant's statement is offered for the fact that it was said, rather than for the truth of its content, it is not hearsay."). This type of evidence has *618 been held admissible under res gestae, which literally means that the thing happened, "things done" or "thing transacted." Black's Law Dictionary 1310 (7th ed., 1999).
¶ 71. Nachtigal's testimony has little, if any, probative value in regards to proving the truth of the statement that Venske did not send a video to Hunt. "Probative value" has been defined as "the tendency of evidence to establish the proposition that it is offered to prove." 1 Charles T. McCormick on Evidence 774 (4th ed. 1992). Even if there is some minimal probative value, proving that the conversation took place is different than proving as true what was said in the conversation. See State v. Payano, 2009 WI 86, ¶ 81, 320 Wis. 2d 348, 768 N.W.2d 832 (2009) ("Essentially, probative value reflects the evidence's degree of relevance. Evidence that is highly relevant has great probative value, whereas evidence that is only slightly relevant has low probative value.").
¶ 72. In light of the circuit court's jury instruction that Officer Nachtigal's testimony could not be used for the truth of the matter asserted, the majority's conclusion of "little meaningful difference" between the probative value of Venske's excluded testimony and the probative value of Officer Nachtigal's admitted testimony is baffling. Majority op., ¶ 32. Contrary to the majority's conclusion, there is a vast probative difference. It takes both a leap of logic and the law to conclude otherwise.
IV
¶ 73. This court has repeatedly stated that a harmless error analysis considers the totality of the circumstances. State v. Beamon, 2013 WI 47, ¶ 3, 347 *619 Wis. 2d 559, 830 N.W.2d 681 ("A harmless error analysis asks whether, based on the totality of the circumstances, it is clear beyond a reasonable doubt that a rational jury, properly instructed, would have found the defendant guilty."); State v. Patricia A.M., 176 Wis. 2d 542, 556-57, 500 N.W.2d 289 (1993) ("[A] reviewing court must look to the totality of record and determine whether the error contributed to the trial's outcome.").
f 74. The majority correctly observes that this court has previously articulated a number of factors to assist in a harmless error analysis, including the importance of the erroneously admitted or excluded evidence, the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence, the nature of the State's case, the overall strength of the State's case, and the nature of the defense. Majority op., ¶ 27 (citing State v. Norman, 2003 WI 72, ¶ 48, 262 Wis. 2d 605, 664 N.W.2d 97).
¶ 75. Although the majority pays lip service to the totality of the circumstances, its focus appears narrow. In all but one of the factors it considers, the majority relies on the strength of Officer Nachtigal's testimony. This almost singular focus is contrary to our harmless error jurisprudence.
¶ 76. In considering the first factor, importance, the majority determines it is informed by the presence or absence of corroborating evidence. Id., ¶ 30. It notes that although Venske was not allowed to testify, Officer Nachtigal's testimony served the same function. Id., ¶¶ 32, 35.
¶ 77. In addressing the nature of the case, the majority again relies on the strength of Officer Nachtigal's testimony. It reasons that because the State was not required to prove how Hunt obtained the video, the *620 only value in Venske's testimony was to corroborate Hunt's version of events. Thus, it determines, "any harm arising from the exclusion of Venske's testimony was minimized by the admission of Officer Nachtigal's testimony." Id., ¶ 34.
¶ 78. Next, in its discussion of the nature and strength of the State's case against Hunt, the majority observes that the State's case was not predicated on whether Hunt received the video from Venske. Id., ¶ 35. It then reiterates that the value of Venske's testimony was in corroborating Hunt's testimony, "a purpose that was effectively achieved by the admission of Officer Nachtigal's testimony." Id.
¶ 79. The only point at which the majority relies on a different basis is in its discussion of Hunt's defense. Id., ¶ 33. There, it notes that the State never suggested at trial that Hunt obtained the video from Venske. Thus, it reasons, although the excluded evidence would have lent credibility to Hunt's version of events, it would not have weakened the State's case. Id.
¶ 80. Overall, the majority's conclusion that the error in excluding Venske's testimony was harmless relies fundamentally on its erroneous assertion that Officer Nachtigal's testimony was the functional equivalent of Venske's. The majority continuously emphasizes its focal point that Nachtigal's testimony filled the void left by the exclusion of Venske's testimony. It is hard to square what is essentially the singular focus in the majority's harmless error analysis with the directive to consider the totality of the circumstances.
*621 V
¶ 81. Contrary to the majority, after considering the totality of the circumstances, I conclude that the State has not shown beyond a reasonable doubt that the circuit court's erroneous exclusion of Venske's testimony was harmless.
¶ 82. In assessing whether an error is harmless, "we focus on the effect of the error on the jury's verdict." State v. Weed, 2003 WI 85, ¶ 29, 263 Wis. 2d 434, 666 N.W.2d 485. We have described the test as "whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. (quoting State v. Harvey, 2002 WI 93, ¶ 44, 254 Wis. 2d 442, 647 N.W.2d 189, quoting in turn Neder v. United States, 527 U.S. 1, 15 — 16 (1999)). To conclude that an error "did not contribute to the verdict... a court must be able to conclude 'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" Id. (quoting Harvey, 254 Wis. 2d 442, ¶ 48 n.14).
¶ 83. As previously noted, we are to consider the totality of the circumstances when conducting a harmless error analysis. Beamon, 347 Wis. 2d 559, ¶ 3. This court has articulated a number of factors which include: the nature of the case, the importance of the erroneously admitted or excluded evidence, the nature of the error and the alleged harm caused, the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence, whether the erroneously admitted evidence duplicates untainted evidence, the nature of the defense, the nature of the State's case, and the overall strength of the State's case. Norman, 262 Wis. 2d 506, ¶ 48; Weed, *622 263 Wis. 2d 434, ¶ 30; see also State v. Rhodes, 2011 WI 73, ¶ 33, 336 Wis. 2d 64, 799 N.W.2d 850.
f 84. Considering the nature of the case, the excluded evidence was of high importance. This case presents two versions of what happened: the events as relayed by A.H. and the events as relayed by Hunt. There was no evidence of what happened on the day in question other than their statements. In these circumstances, the primary focus is on the credibility of these witnesses.
¶ 85. "Corroborating evidence is often the key to breaking credibility deadlocks." Daniel D. Blinka, 7 Wisconsin Practice Series: Wisconsin Evidence, § 420.5 at 294 (3d ed. 2008); see also State v. Daniels, 160 Wis. 2d 85, 109, 465 N.W.2d 633 (1991) (error not harmless when the excluded evidence "was needed to bolster the defendant's credibility"). Venske's testimony would have corroborated Hunt's version of events and thus was important to the credibility determination. Accordingly, the nature of the case and the importance of the excluded evidence weigh against a determination that the error was harmless.
¶ 86. In this context, the nature of the error is particularly onerous. Defendants have a constitutional right to present a defense. As the United States Supreme Court has repeatedly observed, "few rights are more fundamental than that of an accused to present witnesses in his own defense." Chambers v. Mississippi, 410 U.S. 284, 302 (1973) (citations omitted).
¶ 87. Our caselaw stresses the importance of allowing a defendant to "produce supporting evidence" to corroborate his or her version of events. Daniels, 160 Wis. 2d at 104 (a defendant should not be "limited merely to his own assertion but should be allowed to produce supporting evidence" to corroborate his testi *623 mony). Here, the excluded testimony was necessary to bolster Hunt's version of events. This weighs against a determination that excluding Venske's testimony was harmless.
¶ 88. There was no admitted evidence that duplicated or corroborated the erroneously excluded evidence. In this case the only evidence that could be considered duplicating or corroborating the excluded testimony was Officer's Nachtigal's testimony about what Venske told him. Given that Officer Nachtigal's testimony could not be considered for the truth of "whether Venske actually sent something from his phone or not" it was of no value as corroborating evidence. There was no other evidence to take the place of the erroneously excluded evidence. Further, the jury instruction explaining that proof of what Venske did or did not do would have to be established through Venske's testimony only highlighted the lack of such testimony from Venske. As such, this factor also cuts against a conclusion of harmless error.
¶ 89. The other factors this court has offered to assist in harmless error analysis also demonstrate that the State has not met its burden of showing beyond a reasonable doubt that the error did not contribute to the verdict. The majority briefly alludes to the "strength of the State's case" which it frames as "largely dependent on the specific and consistent testimony of A.H., who was the State's principal witness at trial." Majority op., ¶ 35. However, it omits any specific discussion of A.H.'s testimony, and the strength of any other evidence of guilt. Compare id. with State v. Evers, 139 Wis. 2d 424, 450, 407 N.W.2d 256 (1987) (examining the record as a whole, finding that the "evidence of guilt was overwhelming," and concluding that the error of admitting prior crimes *624 testimony was harmless beyond a reasonable doubt). A closer look at the State's case reveals that the fact that it was dependent on A.H.'s testimony was part of its weakness. This was a case of he-said — she-said, and the excluded evidence was the only available evidence to corroborate either version of the story.
¶ 90. These factors, considered in light of the totality of the circumstances, create a reasonable doubt that a rational jury would have found the defendant guilty had the erroneously excluded evidence been admitted. Hunt's sole conviction depended on the jury's belief that he had the video on his phone, despite Hunt's testimony to the contrary. The case turned on the relative credibility of Hunt and A.H., and Venske's excluded testimony was the only testimony offered to bolster either story.
VI
¶ 91. In sum, I conclude that the State failed to meet its burden of proving that the erroneous exclusion of testimony was harmless. It was "directly relevant to Hunt's theory of defense" and "would have corroborated Hunt's testimony and lent credibility to Hunt's version of events." Majority op., ¶ 25.
¶ 92. Contrary to the majority, I conclude that the exclusion of key testimony going to the defendant's credibility, in this case involving two competing versions of events, was not harmless. Accordingly, I respectfully dissent.
¶ 93. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice DAVID T. PROSSER, JR., join this dissent.

 Accordingly, there is no law development function that we engage in here. The test for determining whether the error is harmless is well established. We are left to address only an error correction function, one that this court does not normally perform. See Wis. Stat. § (Rule) 809.62(lr).

 Because this issue is dispositive, I do not address the majority's ineffective assistance of counsel analysis. However, I note that the majority's analysis appears to continue a troubling trend of paying lip service to Strickland v. Washington, 466 U.S. 668 (1984), while deviating from the principles of Strickland itself. See State v. Starks, 2013 WI 69, ¶ 82, 349 Wis. 2d 274, 833 N.W.2d 146 (Bradley, J., dissenting).