BIRTS, Plaintiff in error, v. STATE, Defendant in error.

*No. State 1. Argued April 9, 1975.—Decided May 6, 1975.*
(Also reported in 228 N. W. 2d 351.)

---

For the plaintiff in error there was a brief by *Laurence E. Norton II,* and oral argument by *James Reiher,* both of the Legal Aid Society of Milwaukee.

For the defendant in error there was a brief by *Robert W. Warren,* attorney general, and *Christine M. Wiseman,* assistant attorney general, and oral argument by *William L. Gansner,* assistant attorney general.

Wilkie, C. J. The controversy on this review concerns an attempt by Berry W. Birts, the plaintiff in error, to withdraw his guilty plea that led to his conviction of battery to a police officer in violation of sec. 940.205, Stats., and carrying a concealed weapon in violation of sec. 941.23. He was sentenced to two years on the first charge, and one year on the second, the sentences to run concurrently with each other and with the sentence Birts was then serving for armed robbery. Birts' subsequent motion to withdraw his guilty plea was denied and this court issued writs of error to review both this order and the judgment of conviction. We affirm.

Birts was arrested on November 20, 1971, and charged with battery to a police officer and carrying a concealed weapon, as well as resisting arrest in violation of sec. 946.41, Stats. Birts was a passenger in a car involved in an accident. The arresting officer testified that he asked for identification from Birts who then started to draw a gun. The officer restrained him from drawing, Birts ran, the officer gave chase, and the pair scuffled. Birts then knocked the officer down and jumped on his back.

Before accepting the pleas, the trial court informed the defendant that it was not bound by the plea bargaining that had been agreed upon by defendant and the prosecution to the effect that the defendant would plead guilty to the first two charges and that the charge for resisting arrest would be dismissed. The court informed the defendant that it could sentence him for up to three years' imprisonment, consecutive to rather than concurrent with the armed robbery sentence he was presently serving.[1] The court further informed defendant in de-

---

[1] Apparently Birts was convicted in April of 1968, for armed robbery and sentenced to ten years' imprisonment. There are no official documents concerning this conviction in the record, but at oral argument defendant's attorney stated that Birts was on parole from this sentence at the time of his arrest for the charges involved in the instant case.

tail of the constitutional rights he was giving up. Birts then indicated that he understood everything the court said and had no questions. The court then accepted the defendant's guilty pleas and sentenced him to not more than two years for battery to a police officer and not more than one year for carrying a concealed weapon, the sentences to run concurrently with each other and with the armed robbery sentence he was already serving.

After the guilty pleas were taken and sentencing was completed in June, 1973, the defendant, in October, 1973, moved to vacate his guilty pleas on the ground of his alleged misunderstanding as to the effect of the concurrent sentences upon his mandatory release time. At the hearing on defendant's motion to withdraw his pleas, the defendant testified that at the time he entered his guilty pleas he thought the concurrent sentences would have no effect on his January, 1974, mandatory release date, based on the armed robbery conviction. In fact, however, the defendant testified, parole authorities informed him only two days after he pled guilty that his new mandatory release date would be December, 1974. Defendant contended at the hearing on his attempt to withdraw his guilty pleas that if he had known this effect on his mandatory release date at the time he entered his pleas he would not have pled guilty since he planned to attend college in the semester beginning January, 1974. At the hearing, an assistant district attorney said that he would stipulate to this fact, but the court refused to accept the stipulation. The court later denied the motion based on the court's conclusion that Birts did in fact understand that the new sentences would increase his mandatory release time.

The burden is upon a defendant who wishes to withdraw his guilty plea to show by clear and convincing evidence that the plea was not knowingly and voluntarily entered and that withdrawal is necessary to prevent

manifest injustice.[2] This court, in *State v. Reppin*,[3] adopted the standards of the American Bar Association Project on Minimum *Standards for Criminal Justice Relating To Pleas of Guilty.* The following four factual situations which, if proved by the defendant, justify withdrawal of the plea to correct manifest injustice were recognized in *Reppin* and in numerous later cases:

" '(1) he was denied the effective assistance of counsel guaranteed to him by constitution, statute, or rule;

" '(2) the plea was not entered or ratified by the defendant or a person authorized to so act in his behalf;

" '(3) the plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed; or

" '(4) he did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement.' "

This court has held, of course, that situations presenting a manifest injustice are not necessarily limited to the four examples cited. The defendant, here, in fact does not contend that his understanding regarding his parole rights at the time he pled guilty presents a case that falls squarely within any of the enumerated factual situations. He now argues that lack of knowledge that "the charge or . . . the sentence actually imposed could be imposed" should be extended to include a situation where the defendant does not understand the exact length of time he could spend in prison if he receives the sentence he bargains for.

A preliminary issue presented on this review is whether the defendant in fact did think that by pleading guilty to two crimes and receiving concurrent sentences

[2] *Craker v. State* (1974), 66 Wis. 2d 222, 231, 223 N. W. 2d 872; *Ernst v. State* (1969), 43 Wis. 2d 661, 666, 170 N. W. 2d 713.

[3] (1967), 35 Wis. 2d 377, 385, note 2, 151 N. W. 2d 9.

he would not spend any additional time in jail and that this misunderstanding actually motivated him to plead guilty. The trial court found to the contrary.

The trial court found that defendant did in fact realize that his plea of guilty would increase his time of imprisonment, and further, that whatever defendant's expectations of parole were, they were not the sole or even primary reason for the plea. We have held that in determining whether to grant a motion to withdraw a guilty plea, "the trial court is not obligated to accept the defendant's statements as verities." [4] The court's findings cannot be upset unless they are against the great weight and clear preponderance of the evidence, [5] and here that standard has not been fulfilled. Defendant has had considerable education and previous experience with the prison and parole system. He personally took an active role in the plea bargaining process. He now claims that his plea was motivated by his belief concerning when he would be released from prison, yet nothing in the record suggests he ever expressed his desires regarding parole to either his counsel or the assistant district attorney, or to the trial court when questioned at the time of the giving of the plea. There is no claim that the assistant district attorney made any representations at all to defendant concerning parole. If this particular matter was, in fact, of crucial importance to defendant it is difficult to understand why he never brought it up. Moreover, in a letter to the trial court subsequent to pleading guilty defendant indicated that his alleged expectation concerning parole time was only one of the factors leading to the plea. His letter said, in part:

". . . 'May I further state that I pled guilty to come clean, but I certainly was unaware that a new two-year term carried that amount of gravitation, and I certainly

[4] *Ernst v. State* (1969), 43 Wis. 2d 661, 668, 170 N. W. 2d 713.
[5] *Id.*

am aware that the offenses of which I was convicted are serious offenses. After being reimprisoned for 13 months prior to the convictions of June 27, 1973, I wanted to come clean and to divest myself of the anticipation that I endured as to what the final outcome of these charges would be.' "

The defendant argues here that the trial court was actually foreclosed by stipulation of the parties from making factual findings contrary to his position. This is simply not so. The fact that a stipulation was recited in court as between the defendant and the prosecutor does not mean that the stipulation was final and binding and thus not subject to judicial scrutiny. Sec. 269.46 (2), Stats., provides:

"(2) No agreement, stipulation or consent, between the parties or their attorneys, in respect to the proceedings in an action or special proceeding, shall be binding unless made in court and entered in the minutes or made in writing and subscribed by the party to be bound thereby or by his attorney." [6]

This section has been interpreted by this court in *Schmidt v. Schmidt* [7] as follows:

". . . oral stipulations made in open court during trial, taken down by the reporter and acted upon by the parties *and the court* are valid and binding." (Emphasis supplied.)

Furthermore, as a matter of public policy the entire judicial process in a criminal or civil proceeding is a search for truth,[8] and the trial court's important role

[6] Although this section applies to civil proceedings it is arguably also applicable to the criminal proceedings by virtue of sec. 972.11, Stats.:

". . . The rules of evidence and practice in civil actions shall be applicable in all criminal proceedings unless the context of a section or rule manifestly requires a different construction. . . ."

[7] (1968), 40 Wis. 2d 649, 653, 654, 162 N. W. 2d 618.

[8] *Seybold v. State* (1973), 61 Wis. 2d 227, 230, 212 N. W. 2d 146.

as fact finder should not be usurped by the district attorney entering into a stipulation on a matter of fact which, in the end, has to be determined by the finder of fact. The entire process of plea bargaining involves the public interest to a very significant degree. As the court said in *State ex rel. White v. Gray*,[9] the trial court must determine whether:

" '. . . the agreement is in the public interest in that it takes into account not only the benefit to the public in securing a prompt disposition of the case, but also the importance of a disposition that furnishes the public adequate protection and does not depreciate the seriousness of the offense or promote disrespect for the law.' "

Therefore we conclude that the trial court possessed the power to refuse to accept the stipulation proposed by the assistant district attorney in this case and, in so refusing, was free to make findings contrary to its terms.

Assuming *arguendo* the truth of the defendant's assertions that he pled guilty because of the alleged misunderstanding of his parole rights, we conclude that such misunderstanding does not render the plea involuntary or establish manifest injustice. This is the second issue presented on this review. Defendant relies principally on *Brady v. United States*,[10] where the United States Supreme Court stated, relative to the withdrawal of guilty pleas:

" ' "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." 242 F. 2d at page 115.' "

---

[9] (1973), 57 Wis. 2d 17, 30, 203 N. W. 2d 638.
[10] (1970), 397 U. S. 742, 755, 90 Sup. Ct. 1463, 25 L. Ed. 2d 747.

The important point here is that the alleged misunderstanding concerned indirect consequences of the plea, defendant's parole rights, and that absolutely no commitment was made as to those rights. Defendant was not coerced into pleading guilty by promises by the prosecutor or judge concerning when he would be free from prison. His beliefs concerning his release time were the product of his own mind and entirely unexpressed in the plea bargaining process. As the United States Supreme Court said in *Brady:* [11]

". . . The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action."

In *Kruse v. State* [12] we affirmed the denial of a motion to withdraw a guilty plea where the contention was made, as here, that failure to know when he would be eligible for parole rendered the plea involuntary. The court found that the defendant there did, in fact, know his parole rights and thus never actually reached the question of the consequences of lack of knowledge. We now hold that where a plea of guilty is motivated by defendant's own subjective uncoerced beliefs about future parole eligibility, the plea may not be withdrawn, assuming the plea was otherwise knowing and voluntary.

In two other recent Wisconsin cases concerning a defendant's subjective beliefs about the collateral consequences of a guilty plea, this court held, in *Drake v. State,* [13] that a defendant could not withdraw his plea

[11] *Id.* at page 757.
[12] (1970), 47 Wis. 2d 460, 177 N. W. 2d 322.
[13] (1969), 45 Wis. 2d 226, 172 N. W. 2d 664.

where he had pled guilty in part to avoid implicating his jailbreak confederates; and in *State v. McKnight,*[14] that the defendant could not withdraw his plea where the plea was allegedly entered based upon the mistaken belief that there was no other way to secure a bail review.

Additionally, there are compelling practical reasons for not imposing upon the trial court the duty of informing defendants of their parole rights. Such information, if it is to be supplied, should come from the defendant's counsel. The trial court is solely responsible for the sentencing decision, but decisions concerning parole are made by the department of health and social services. It is impossible for the court, or anyone, to state in advance how long a particular defendant will spend in prison. He may be paroled under sec. 57.06, Stats., after a certain period, at the department's discretion. He is entitled to parole as a matter of right under sec. 53.11 (7) (a) but he must first accumulate sufficient "good time" credits under sec. 53.11 (1) and "diligence" credits under sec. 53.12 (1), which, as the names imply, depend upon the inmate's prison behavior, another factor not known in advance. The situation is further complicated where, as here, a defendant commits a crime while on parole and is returned to prison. Under sec. 53.11 (7) (b) the inmate may again be released when sufficient good-time credits are accumulated, but the release is no longer mandatory; the subsection provides "Subject to the approval of the department, he *may* again be released." [15] (Emphasis supplied.) Thus, since the time when a defendant may actually be released

---

[14] (1974), 65 Wis. 2d 582, 223 N. W. 2d 550.

[15] In contrast, sec. 53.11 (7) (a), Stats., provides that the inmate *"shall* be released." This subsection applies where the inmate initially accumulates sufficient good-time credits. If he violates parole and is returned to prison, sec. 53.11 (7) (b) controls. The distinction between the subsections was discussed in *State ex rel. Stenson v. Schmidt* (1964), 22 Wis. 2d 314, 125 N. W. 2d 634.

from jail cannot be determined in advance and may be dependent upon factors outside the trial court's knowledge and its control, we conclude it would be unreasonable to require the court to inform every defendant pleading guilty of his parole rights.

*By the Court.*—Judgment and order affirmed.