STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeramey J. BYRGE, Defendant-Appellant.†

Court of Appeals

*No. 97–3217–CR. Submitted on briefs November 5, 1998.—Decided March 17, 1999.*

(Also reported in 594 N.W.2d 388.)

†Petition to review granted.

703

705

707

On behalf of the defendant-appellant, the cause was submitted on the brief of *Steven P. Weiss*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sally L. Wellman*, assistant attorney general.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

NETTESHEIM, J.   Jeramey J. Byrge appeals from a judgment of conviction for first-degree intentional homicide and related felonies. The judgment was entered following Byrge's withdrawal of his not guilty and not guilty by reason of mental defect (NGI) pleas and his entry of no contest pleas to the charges. Byrge

also appeals from an order denying postconviction relief.

On appeal, Byrge contends that: (1) he was not competent to participate in the proceedings; (2) the plea colloquy was defective because the trial court did not advise him that the court could set a parole eligibility date pursuant to § 973.014(1), STATS.; and (3) his trial counsel was ineffective.

We reject all of Byrge's arguments. We affirm the judgment and the postconviction order.

## PROCEDURAL HISTORY

On August 25, 1994, the State filed a complaint against Byrge alleging that he committed the first-degree murder of Joan Wagner contrary to § 940.01(1), STATS. In addition, the complaint charged Byrge with the following related crimes: (1) hiding a corpse pursuant to § 940.11(2), STATS.; (2) false imprisonment pursuant to § 940.30, STATS.; (3) bail jumping pursuant to § 946.49(1)(b), STATS.; and (4) operating a motor vehicle without the owner's consent pursuant to § 943.23(2), STATS. Following a preliminary hearing, Byrge was bound over for trial. The information alleged the same counts charged in the complaint.

On September 23, Byrge entered pleas of not guilty to all the charges. On October 24, Byrge amended his pleas to include NGI pleas to the charges. On November 15, Byrge withdrew his not guilty pleas to all the charges except the false imprisonment charge, and he entered pleas of no contest. However, Byrge continued to stand on his NGI pleas as to all the charges.[1]

---

[1] Byrge's decision to change his pleas to no contest on all of the charges except the false imprisonment charge was not the result of any plea agreement.

709

On March 20, 1995, Byrge's trial counsel requested a hearing as to Byrge's competency to proceed. On April 21, three days before the scheduled jury trial on Byrge's NGI pleas, the trial court was prepared to conduct the competency hearing. However, the court's appointed psychiatrist was not available, and the matter was continued to the following Monday when the jury trial on the NGI pleas was also scheduled.

At the conclusion of the competency hearing on the following Monday, the trial court determined that Byrge was competent to proceed to trial. Byrge then sought to reinstate his not guilty pleas. The court denied the motion. Byrge then asked to withdraw his NGI pleas. After conducting a colloquy with Byrge, the trial court permitted Byrge to withdraw the NGI pleas and adjudged him guilty of the four offenses to which he had pled no contest. At the State's request, the court then dismissed the false imprisonment charge. The court ordered a presentence examination.

At the sentencing, the trial court sentenced Byrge to life imprisonment on the first-degree murder conviction with a parole eligibility date set for July 2, 2095. In addition, the court imposed a consecutive five-year term on the hiding a corpse conviction and concurrent five-year terms on the bail jumping and operating without consent convictions.

Postconviction, Byrge challenged, inter alia, the trial court's determination that he was competent to proceed, the effectiveness of his trial counsel and the adequacy of the plea colloquy. The trial court rejected these challenges, and Byrge renews these claims on appeal.

## DISCUSSION

### A.  Competency to Proceed

#### 1.  Standard of Appellate Review

Byrge challenges the trial court's determination that he was competent to proceed. As a threshold issue, the parties dispute our standard of review. Byrge contends that we should apply a de novo standard. He relies on Chief Justice Shirley S. Abrahamson's concurring opinion in *State v. Garfoot,* 207 Wis. 2d 214, 558 N.W.2d 626 (1997), although he concedes that the majority opinion in *Garfoot* holds that the "clearly erroneous" standard of review applies to a trial court's determination of a defendant's competency to stand trial. *See id.* at 217, 558 N.W.2d at 628. We obviously must follow the supreme court's holding in *Garfoot.* Therefore, we apply the clearly erroneous standard.[2]

#### 2.  The Trial Court's Competency Determination

Byrge contends that the trial court erroneously determined that he was competent to proceed. The

---

[2] Byrge's argument for the position of Chief Justice Shirley S. Abrahamson's concurrence in *State v. Garfoot,* 207 Wis. 2d 214, 558 N.W.2d 626 (1997), is based on the fact that her concurrence was joined in by two other justices and that Justice William A. Bablitch would likely have joined in her concurrence had the issue been more adequately briefed and debated more thoroughly at oral argument. *See id.* at 238, 558 N.W.2d at 636. Because the issue is adequately briefed in this case, we agreed with Byrge that the holding in *Garfoot* might be in jeopardy. We therefore certified this question to the supreme court. However, the court rejected the certification.

State correctly opens its response by citing to the supreme court's language in *Garfoot:*

> The basic test for determining competency was established by the United States Supreme Court in *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam). A person is competent to proceed if: 1) he or she possesses sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding, and 2) he or she possesses a rational as well as factual understanding of a proceeding against him or her. *Dusky*, 362 U.S. at 402. The Court later expanded on this test, noting that "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1975).
>
> Wisconsin Statutes § 971.13(1) is the codification of the *Dusky* test. In Wisconsin, if a defendant claims to be incompetent, the court shall find him incompetent to proceed unless the state can prove by the greater weight of the credible evidence that the defendant is competent under the two-part *Dusky* standard as explained by the court in *Drope*.

*Garfoot*, 207 Wis. 2d at 223, 558 N.W.2d at 630.

Byrge appears to argue that the law applies differing standards for a competency determination depending on the stage of the proceedings. Because this case concerns the critical decision to withdraw prior not guilty and NGI pleas and enter pleas of no contest, Byrge argues that a higher or more demanding standard is necessary. Byrge relies on the supreme court's language in *State v. Debra A.E.*, 188 Wis. 2d 111, 124–25, 523 N.W.2d 727, 732 (1994):

Competency is a contextualized concept; the meaning of competency in the context of legal proceedings changes according to the purpose for which the competency determination is made. Whether a person is competent depends on the mental capacity that the task at issue requires. [Footnotes omitted.]

We see nothing in this language that changes the black letter law for a competency determination. *Debra A.E.* merely explains that each competency determination must be tailored to the facts of the particular case and the stage of the proceedings in which the issue is raised. However, the legal standard for competency remains the one reaffirmed in *Garfoot*.

In this case, the only testimony offered at the competency hearing was that of Dr. Ralph K. Baker, whom the trial court had appointed as its expert regarding Byrge's NGI pleas. When Byrge raised the competency issue, the court directed Baker to also make a report on that question. Baker acknowledged that Byrge was not in good mental health and had a "great deal of anxiety and frustration and depression." Nonetheless, Baker concluded that Byrge had the capacity to cooperate with his attorney, to assist in his own defense and to understand the proceedings.[3] As such, Baker concluded that Byrge was competent to proceed. Relying

---

[3] A person is not incompetent simply because he or she is not in good mental health or because he or she has thoughts that a mature, healthy individual would not have. Many mentally ill persons are competent to proceed. *See State ex rel. Haskins v. County Courts*, 62 Wis. 2d 250, 264, 214 N.W.2d 575, 582 (1974) (noting that "too often medical experts . . . play it safe and conclude that the defendant is not competent to stand trial because of a diagnosis of mental illness which may not be related to the limited nature of the competency question . . . .").

on this testimony, the court determined that Byrge was competent to proceed.

In support of his argument against the trial court's competency determination, Byrge alludes to the reports submitted by his expert, Dr. A. A. Lorenz, and the State's expert, Dr. Frederick Fosdal. However, these doctors did not testify at the competency hearing and their reports were not offered as evidence at the hearing.

The trial court's finding that Byrge was competent to proceed was supported by Baker, the only witness who testified at the hearing. The court's finding is not clearly erroneous. We affirm the competency finding.

## B. Plea Colloquy/Parole Eligibility

Byrge contends that the trial court's plea colloquy was defective because he was not advised that the court could set a parole eligibility date. This is an issue of first impression in Wisconsin.[4]

Section 973.014(1), STATS., requires a sentencing court to make a parole eligibility determination for a defendant sentenced to life imprisonment. The court has three options: (1) determine that the defendant is eligible for parole pursuant to § 304.06(1), STATS.; (2) determine a parole eligibility date; or (3) determine that the defendant is not eligible for parole. *See* § 973.014(1)(a)–(c). Here, the trial court selected the second option and fixed Byrge's parole eligibility date at July 2, 2095, a date obviously beyond Byrge's life expectancy. The court's plea colloquy with Byrge, while

---

[4] We also certified this issue to the Wisconsin Supreme Court. As previously noted, the supreme court rejected the certification.

extensive and otherwise complete, did not advise Byrge of the court's options under § 973.014 or, specifically, that the court could fix a parole eligibility date. Byrge contends that this failure was error. He rests his argument on both statutory and constitutional grounds.

Byrge notes that § 971.08(1)(a), STATS., requires the trial court to determine that the defendant understands "the potential punishment if convicted." *See also State v. Bangert*, 131 Wis. 2d 246, 262, 389 N.W.2d 12, 21 (1986). As to his constitutional argument, Byrge cites to *Gates v. United States*, 515 F.2d 73 (7th Cir. 1975), which held that ineligibility for parole was a direct consequence of a plea and that the failure to advise a defendant of that ineligibility was a "fundamental defect which inherently results in a complete miscarriage of justice." *Id.* at 80.

We first address *Gates*. Although the *Gates* language has a due process ring, we disagree with Byrge that *Gates* was decided on constitutional grounds. To the contrary, the *Gates* court expressly stated that "it is not necessary to reach the question of whether the acceptance of the guilty pleas in the instant cases was unconstitutional since we find here that petitioners are entitled to relief on the nonconstitutional ground." *Id.* at 80. Instead, the court granted relief under the then language of RULE 11 of the FEDERAL RULES OF CRIMINAL PROCEDURE. *See Gates*, 515 F.2d at 79–80.

In the context of an ineffective assistance of counsel setting where trial counsel had incorrectly advised the defendant about parole eligibility, the United States Supreme Court stated, "We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to

be voluntary . . . ." *Hill v. Lockhart,* 474 U.S. 52, 56, (1985). Wisconsin law is in accord. In *Birts v. State,* 68 Wis. 2d 389, 398–99, 228 N.W.2d 351, 356 (1975), our supreme court held that a trial court was not required to inform defendants of their parole rights.

We acknowledge that *Hill* and *Birts* presented situations under the traditional notion of parole which leaves the parole decision to a parole board. The holding in *Birts* was grounded, in part, on that logic. *See Birts,* 68 Wis. 2d at 398–99, 228 N.W.2d at 356. In contrast, § 973.014(1), STATS., authorizes the sentencing court to become directly involved with the threshold parole decision—namely, initial parole eligibility. That admittedly makes this a closer case. However, relying in part on *Hill,* the Ninth Circuit Court of Appeals has held that a trial court need not forewarn a defendant *that he or she was not even eligible for parole in the first instance. See United States v. Sanclemente-Bejarano,* 861 F.2d 206, 208–09 (9th Cir. 1988).[5] In this case, we note that § 973.014(1) does not *mandate* the sentencing court to fix a parole eligibility date. It merely allows the court to do so should the

[5] For similar rulings, *see King v. Dutton,* 17 F.3d 151 (6th Cir. 1994); *Johnson v. United States,* 650 F.2d 1 (1st Cir. 1981); *Hunter v. Fogg,* 616 F.2d 55 (2d Cir. 1980); *Armstrong v. Egeler,* 563 F.2d 796 (6th Cir. 1977); *Trujillo v. United States,* 377 F.2d 266 (5th Cir. 1967); *Fryer v. Scurr,* 309 N.W.2d 441 (Iowa 1981); *Ware v. State,* 379 So. 2d 904 (Miss. 1980); *see also, generally, Kinnersley v. State,* 494 N.W.2d 698 (Iowa 1993); *Grout v. State,* 320 N.W.2d 619 (Iowa 1982); *Hicks v. State;* 552 P.2d 889 (Kan. 1976); *Yoswick v. State,* 700 A.2d 251 (Md. 1997); *Houle v. State,* 482 N.W.2d 24 (N.D. 1992); *Jones v. Cupp,* 490 P.2d 1038 (Or. Ct. App. 1971).

court so choose.[6] Because the option of leaving parole eligibility to the parole board still exists under the statute and since our supreme court has held in *Birts* that parole eligibility is not a necessary component of a valid plea colloquy, we conclude that a defendant is not statutorily or constitutionally entitled to a forewarning about parole eligibility as part of the plea colloquy in a case under § 973.014(1).

Byrge also relies on the court of appeals decision in *State v. Bentley*, 195 Wis. 2d 580, 536 N.W.2d 202 (Ct. App. 1995), *rev'd on other grounds*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996). There, the court held that a defense attorney's failure to correctly advise a client about parole eligibility can be a basis for an ineffective assistance of counsel claim. *See id.* at 587–91, 536 N.W.2d at 204–06. In making that ruling, the court of appeals stated that parole eligibility information is "an integral factor in plea negotiations; it is a *direct, not a collateral,* consequence of the sentence." *Id.* at 590, 536 N.W.2d at 205 (emphasis added) (quoting *Hill v. Lockhart*, 877 F.2d 698, 703 (8th Cir. 1989), *aff'd en banc on reh'g*, 894 F.2d 1009 (8th Cir. 1990)).

However, the court of appeals decision in *Bentley* was reversed on other grounds by the Wisconsin Supreme Court. As a result, the parties dispute whether the court of appeals holding in *Bentley* is still good law.[7] Assuming it is, we nonetheless conclude

---

[6] We also note that the trial court is not in a position at the time of the plea to determine which option it will exercise under § 973.014(1), STATS. That determination is made at the time of the sentencing.

[7] The supreme court held that Bentley's motion was facially insufficient. *See State v. Bentley*, 201 Wis. 2d 303, 306, 548 N.W.2d 50, 52 (1996). Ordinarily, holdings not specifically

that *Bentley* does not govern the issue before us. As noted, *Bentley* was an ineffective assistance of counsel case.[8] Here, the issue comes to us via Bygre's direct claim that the trial court's plea colloquy was defective. As we have already held, a plea colloquy need not include notice that the court may set a parole eligibility date. The plea colloquy here was proper.[9]

## C. Ineffective Assistance of Counsel

### 1. The Law

To establish ineffective assistance of counsel, Byrge must satisfy a two-part test. First, he must show that his counsel's performance was deficient. Second, he must prove that the deficient performance prejudiced the defense. *See State v. Griffin*, 220 Wis. 2d 371, 390, 584 N.W.2d 127, 135 (Ct. App.), *review denied*, 221 Wis. 2d 654, 588 N.W.2d 631 (1998).

---

reversed on appeal retain precedential value. *See Spencer v. County of Brown*, 215 Wis. 2d 641, 650, 573 N.W.2d 222, 226 (Ct. App. 1997). However, it is not clear whether this general rule should apply when the message from the supreme court is that the court of appeals should not even have addressed the issue in the first instance. We therefore certified this additional question. Again, the certification was rejected.

[8] Although Byrge raises other ineffective assistance of counsel issues, this is not one of them.

[9] Although the court of appeals concluded that a failure to correctly advise of parole eligibility can be a basis for an ineffective assistance of counsel claim, the court further noted that "the state has no federal constitutional duty to inform a defendant about parole." *See State v. Bentley*, 195 Wis. 2d 580, 590, 536 N.W.2d 202, 205 (Ct. App. 1995), *rev'd on other grounds*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996) (quoted source omitted). That statement is in accord with our holding in this case.

The test for deficient performance is whether counsel's representation fell below objective standards of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). In applying this test, we inquire whether, under the circumstances, counsel's acts or omissions were outside the wide range of professionally competent assistance. *See id.* at 690. Trial counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *See id.* We also must be careful to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *See id.* at 689.

As to prejudice, the defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *See Griffin*, 220 Wis. 2d at 391, 584 N.W.2d at 135.

What occurred at the trial level and what the attorney did or did not do are questions of historical or evidentiary fact. We will not upset the trial court's findings about these matters unless they are clearly erroneous. *See State v. Jones*, 181 Wis. 2d 194, 199, 510 N.W.2d 784, 786 (Ct. App. 1993). However, the ultimate conclusion of whether the attorney's conduct resulted in a violation of the defendant's right to effective assistance presents a legal question which we review de novo. *See id.*

719

With these legal principles in mind, we turn to Byrge's claims.

## 2. General Claim

Byrge opens his arguments with a very broad attack on trial counsel's overall performance. Byrge claims that "[trial counsel] did virtually nothing to defend his client against the charges in this case, beyond merely showing up for the court hearings." This argument is meritless. Trial counsel investigated the case, demanded a preliminary hearing, litigated the preliminary hearing, entered pleas of not guilty and NGI, obtained an expert in an effort to support the NGI pleas, raised the issue of Byrge's competency to proceed, and litigated the competency issue to a conclusion.

As our ensuing discussion will reveal, the later abandonment of the pleas and the decision to plead no contest to the charges were proper tactical decisions made by Byrge, not trial counsel. We view much of Byrge's challenge to trial counsel's performance to be the kind of "Monday-morning quarterbacking" which the law frowns upon. In hindsight, Byrge raises a host of other options that counsel could have pursued. The problem with this approach is that, in many instances, these arguments are made in a vacuum and with little regard to the circumstances actually existing at the time counsel made his or her decisions. We reject this generalized challenge to trial counsel's performance.

We now address Byrge's specific claims of ineffective assistance of counsel in the order in which the episodes occurred in the trial court.

### 3. Withdrawal of Not Guilty Pleas

Byrge claims that his trial counsel was ineffective for allowing him to withdraw his not guilty pleas and enter no contest pleas to all but the false imprisonment charge. Byrge's appellate argument in his brief-in-chief is limited to the following:

> [T]he no contest pleas were entered on November 15, 1994, only 3 weeks after Byrge entered his NGI plea, and long *before* any of the psychiatric examinations had even taken place, much less the reports filed. What strategy would justify pleading to first degree murder *before* there was any indication of the strength of the NGI case?

On this basis alone we could decline to address Byrge's argument. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633, 642 (Ct. App. 1992) ("We may decline to review issues inadequately briefed."). However, the State has responded to this issue in some detail. We therefore will address the issue on the merits.[10]

We are not persuaded that trial counsel was ineffective. Counsel explained at the *Machner*[11] hearing that the State's case against Byrge was "overwhelming." Counsel stated that the only plausible defense was for Byrge to deny that he committed the offenses,

---

[10] The trial court's written decision does not expressly address this aspect of Bryge's claim that trial counsel was ineffective. That would ordinarily call for us to remand this matter to the trial court. However, Byrge's appellate argument does not complain that the trial court did not speak to this precise issue; neither does Byrge seek a remand for the court to do so. We therefore address the issue as if the trial court had decided the issue adversely to Byrge.

[11] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

but Byrge had consistently told counsel that he would not testify. Thus, the most critical witness, Byrge himself, in support of the most plausible theory of defense, was functionally unavailable to counsel. Importantly, counsel also testified that he spoke in detail with Byrge before Byrge withdrew his not guilty pleas and entered the no contest pleas.

Byrge's principal complaint is that trial counsel advised him to withdraw his not guilty pleas before any psychiatric examinations had ever taken place. As quoted above, Byrge rhetorically asks "What strategy would justify pleading to first degree murder *before* there was any indication of the strength of the NGI case?" But we do not agree with Byrge that the undetermined strength of the NGI pleas necessarily governed whether counsel properly advised Byrge to withdraw his not guilty pleas and to stand on the NGI pleas. Even without the psychiatric examinations, Byrge's mental health history gave counsel a solid basis to enter the NGI pleas and to narrow the issues for trial to Byrge's mental responsibility. We conclude that counsel's advice to Byrge on this point fell within the objective standards of reasonableness. *See Strickland,* 466 U.S. at 688.

Byrge's argument also suggests that trial counsel's advice potentially left Byrge without any viable defense if the psychiatric examinations did not support the NGI pleas. However, we will never know if such was the case because Byrge later decided to also withdraw his NGI pleas. And, as we will explain when we later address this specific issue, Byrge took this action *against trial counsel's advice.* Therefore, we cannot say that counsel's advice to withdraw the not guilty pleas, to enter no contest pleas, and thereby to stand on the

NGI pleas ever prejudiced Byrge. And even if we were to hold that Byrge was prejudiced, that prejudice was produced by Byrge himself, not trial counsel.

We reject Byrge's ineffective assistance of counsel claim as to this issue.

### 4. Competency Hearing

Next, Byrge contends his trial counsel was ineffective at the competency hearing on various grounds.

Byrge first argues that trial counsel should have produced the testimony or reports of Fosdal and Lorenz at the competency hearing. However, Fosdal concluded that Byrge was competent. In light of this, counsel clearly was not ineffective and Byrge clearly was not prejudiced.

Lorenz's report does include selected remarks which arguably support Byrge's lack of competency claim. However, Lorenz never opined that Byrge was not competent to proceed. Trial counsel made the tactical decision not to call Lorenz as a witness at the hearing because Lorenz had advised counsel that Byrge could be "putting on and Jeramey's way of manipulating the system." In addition, Lorenz examined Byrge for purposes of the potential NGI defense, not for purposes of assessing Byrge's competency to proceed.[12] Counsel was concerned that favorable portions of the report would lose their sway when viewed in that context. Counsel was also concerned that if he introduced the favorable portions of the report, other portions of the report which did not support a lack of competency claim would be admitted. We cannot say that these reasons fall outside the range

---

[12] This same is true of Fosdal.

of professionally competent assistance. *See Strickland*, 466 U.S. at 690.

Under the facts of this case, we also deem it important that Byrge did not call Lorenz as a witness at the postconviction *Machner* hearing. A defendant who alleges that counsel was ineffective by failing to take certain steps must show with specificity what the actions, if taken, would have revealed and how they would have altered the outcome of the proceeding. *See State v. Flynn*, 190 Wis. 2d 31, 48, 527 N.W.2d 343, 349–50 (Ct. App. 1994). Without Lorenz's testimony, and particularly without any cross-examination, we are left to wonder whether Lorenz would have contributed credible and reliable information establishing "a reasonable probability that, but for counsel's unprofessional errors, the result of the [competency hearing] would have been different." *Griffin*, 220 Wis. 2d at 391, 584 N.W.2d at 135 (quoted source omitted). We decline to hold that Lorenz's report, prepared for a purpose other than assessing Byrge's competency to proceed, suffices to show prejudice to Byrge even though it contains isolated statements supportive of Byrge's contention that he was incompetent to proceed.

Byrge also takes issue with trial counsel's testimony at the *Machner* hearing that he personally had no doubts about Byrge's competency to proceed. As impeaching evidence, Byrge points to counsel's statement at the competency hearing that he was in a difficult situation representing Byrge and to counsel's suggestion that he might have relevant evidence to offer on the competency question. However, because he was Byrge's attorney, counsel stated that he could not offer that evidence. Byrge also points to an episode just before the hearing during which Byrge had intention-

ally injured himself with a piece of glass and had to be restrained in the courtroom.

At the *Machner* hearing, trial counsel conceded that at times he had difficulty consulting with Byrge. However, counsel qualified this statement with the following:

> Does he seem like he's having trouble following you, or is he being manipulative? And my honest answer to that would be it seems to me that Mr. Byrge follows me very well when he chooses to, and when he chooses to try to manipulate me, then he cannot. . . .
>
> . . . [T]he natural follow-up to that is I have my questions as to whether Mr. Byrge sincerely has that difficulty or chooses to have that difficulty.

Counsel also testified that if he had withdrawn from the case in order to offer testimony, such evidence would have been harmful, not helpful, to Byrge.

It is implicit from the trial court's ruling, which quoted the above testimony, that the court adopted trial counsel's testimony as credible. This assessment is not clearly erroneous, particularly when compared with Byrge's testimony which contended, in part, that counsel had suggested that Byrge physically harm himself in order to "[make the NGI plea] work."

We reject Byrge's ineffective assistance of counsel claims as related to the competency hearing.

### 5. *Motion to Withdraw No Contest Pleas*

Byrge contends that trial counsel was ineffective for making only a "half hearted" attempt to withdraw Byrge's no contest pleas and to reinstate his not guilty pleas after the trial court determined that Byrge was

competent to proceed. However, counsel testified that Byrge's testimony was necessary to support such a request and that he urged Byrge to so testify. However, Byrge refused, and he acknowledged this refusal at the *Machner* hearing. And when asked at the *Machner* hearing to recite the grounds for his request to withdraw his no contest pleas, *Byrge again refused to answer.*

We cannot find trial counsel ineffective for failing to support the request for a plea withdrawal when Byrge's testimony was essential to the request and Byrge refused to follow counsel's advice. Such a ruling would stand the law of effective assistance of counsel on its head. Moreover, the trial court aptly observed that it could hardly fault trial counsel for failing to persuade Byrge to testify in support of his plea withdrawal request when postconviction counsel was similarly unsuccessful at the *Machner* hearing.

### 6. *Withdrawal of NGI Pleas*

Finally, Byrge argues that trial counsel was ineffective for allowing him to withdraw his NGI pleas.

However, the testimony of both Byrge and trial counsel agree that it was Byrge, not trial counsel, who made this decision. According to counsel's testimony, this decision was made after he and Byrge discussed the matter at length. Counsel testified that he explained Byrge's options and that Byrge appeared to understand his advice. Counsel cautioned Byrge that this was his only chance to try the NGI issue and that he would not have another chance. Counsel advised Byrge to go through with the NGI trial. But Byrge insisted that he wanted to withdraw the NGI pleas. Counsel testified that Byrge wanted to withdraw the

pleas because he did not want to give the district attorney and the victim's family the satisfaction of going through the trial.

Byrge's testimony at the *Machner* hearing supports trial counsel's testimony. Byrge testified that the decision to withdraw the NGI pleas was his and that he understood the rights he was giving up by doing so. The decision to withdraw a NGI plea belongs to the defendant, not to counsel. *See State v. Felton*, 110 Wis. 2d 485, 514, 329 N.W.2d 161, 174 (1983). We are not privileged to assess the wisdom of Byrge's choice. Rather, our duty is to assure that Byrge's choice was made with knowledge of his options and his rights. Here, counsel properly conveyed this information to Byrge. Counsel was not ineffective.

## CONCLUSION

We uphold the trial court's determination that Byrge was competent to proceed. Although we recommend the practice, we hold that a valid plea colloquy does not require that the court advise a defendant that the court may set a parole eligibility date. Finally, we hold that Byrge's trial counsel was not ineffective.

*By the Court.*—Judgment and order affirmed.